# "EXHIBIT 1"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

SERGEANT HECTOR RODRIGUEZ                                    Docket No.: 13 CV 4138
                        Plaintiff,

     -against-                                              **SUMMONS**
                                                            **IN CIVIL ACTION**

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, NEW YORK CITY POLICE DEPARTMENT
ADVOCATE'S OFFICE, DEPUTY INSPECTOR MATTHEW
HYLAND, individually and in his official capacity as
employee/agent of City of New York and New York City Police
Department, CAPTAIN DERRICK S. CORRADO, individually
and in his official capacity as employee/agent of the City of New
York and New York City Police Department, LIEUTENANT
LOUIS DE CEGLIE, , individually and in his official capacity as
employee/agent of the City of New York and New York City
Police Department, SERGEANT LARRY FLUNORY,
individually and in his official capacity as employee/agent of the
City of New York and New York City Police Department,
DEPUTY COMMISSIONER, ATTORNEY JULIE L.
SCHWARTZ, individually and in her official capacity as
employee/agent of the City of New York, the New York City
Police Department and the New York City Police Department's
Advocate's Office, ATTORNEY LISA BLAND, individually and
in her official capacity as employee/agent of the City of New
York, the New York City Police Department and the New York
City Police Department's Advocate's Office, and "JOHN DOES"
and "JANE DOES", names being fictitious intended to be
officers/representatives/agents/servants of the City of New York,
New York City Police Department and/or New York City Police
Department Advocate's Office, individually and in their official
capacities,
                        Defendants.

-------------------------------------------------------------------------X

**To the above named Defendants:**

**YOU ARE HEREBY SUMMONED** and required to file with the clerk of this Court and
serve upon

     PLAINTIFF'S ATTORNEYS:
     DRUMMOND & SQUILLACE, PLLC
     175-61 Hillside Avenue, Sutie 205
     Jamaica, New York 11432

to answer the complaint this is herewith served upon you, within 21 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Dated:    Jamaica, New York
          June 17, 2013
          RUBY J. KRAJICK    JUN 14 2013

| | | |
|---|---|---|
| CLERK | DATE | BY DEPUTY CLERK |

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

SERGEANT HECTOR RODRIGUEZ,

# 13 CV 4138

Plaintiff,

**COMPLAINT
AND JURY
DEMAND
JUDGE HELLERSTEIN**

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, NEW YORK
CITY POLICE DEPARTMENT ADVOCATE'S OFFICE, DEPUTY INSPECTOR MATTHEW
HYLAND, individually and in his official capacity as employee/agent of City of New York and
New York City Police Department, CAPTAIN DERRICK S. CORRADO, individually and in
his official capacity as employee/agent of the City of New York and New York City Police
Department, LIEUTENANT LOUIS DE CEGLIE, , individually and in his official capacity as
employee/agent of the City of New York and New York City Police Department, SERGEANT
LARRY FLUNORY, individually and in his official capacity as employee/agent of the City of
New York and New York City Police Department, DEPUTY COMMISSIONER, ATTORNEY
JULIE L. SCHWARTZ, individually and in her official capacity as employee/agent of the City
of New York, the New York City Police Department and the New York City Police
Department's Advocate's Office, ATTORNEY LISA BLAND, individually and in her official
capacity as employee/agent of the City of New York, the New York City Police Department and
the New York City Police Department's Advocate's Office, and "JOHN DOES" and "JANE
DOES", names being fictitious intended to be officers/representatives/agents/servants of the City
of New York, New York City Police Department and/or New York City Police Department
Advocate's Office, individually and in their official capacities,

Defendants.

-----------------------------------------------------------------------X

　　　　Plaintiff, Sergeant Hector Rodriguez, (hereinafter "Plaintiff"), in his individual capacity

states as follows:

## INTRODUCTION

　　　　1.　　This is an action against Defendants to redress a pattern and practice of wrongful and

unlawful conduct including, but not limited to: coordinated effort to secure the termination of

Plaintiff's employment; coordinated efforts to penalize/punish the Plaintiff through the

administrative channels/proceedings of the New York City Police Department; discrimination

against Plaintiff based upon his race, color, national origin, ethnicity in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 19103, 19103(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(I), New York Executive Law Art. 15 (NY Human Rights Law); unlawful hostile work environment; unlawful retaliation; violation of New York State Human Rights Law Sections 290-297; discrimination against the Plaintiff based upon his national origin and hostile work environment in violation of the laws and the Constitution of the State of New York and the laws and the Constitution of the United States of America; denial of Plaintiff's State and Federal Constitutional Right to Equal Protection of the Law in violation of the 14th Amendment to the Constitution of the United States of America; denial of Plaintiff's State and Federal Constitutional Right to Due Process of the Law; deprivation of Plaintiff's proprietary interest in his acquired rank/title/position of Lieutenant without due process of law in violation of the State and Federal Constitutional Rights; discrimination against Plaintiff based upon his service in the United States Armed Forces in violation of the Uniformed Services Employment and Reemployment Rights Action of 1994 (USERRA, 38 U.S.C. Sections 4301-4335).

2.      During the course of his employment and continuing, Plaintiff was and is being subjected to discrimination based upon his race, national origin and based upon the fact that Plaintiff is a member of the United States Military Reserves to which Plaintiff complained to the City of New York, the New York City Police Department and to his Chain of Command in the New York City Police Department, but to no avail. After Plaintiff complained of the foregoing, in response, Plaintiff was subjected to retaliation in that the Defendants acting in concert each with the other and within the scope of their employment embarked upon a systematic and coordinated effort to deny the Plaintiff of the enjoyment of life, to deny the Plaintiff his duly

2

earned promotion to the rank of Lieutenant, to deny him his proprietary interest, to frustrate, harass, intimidate and punish the Plaintiff and to further subject him to unlawful disparate treatment.

3.    As a direct and proximate result of Defendants' wrongful and unlawful conduct, Plaintiff has suffered and continues to suffer mental anguish, loss of the enjoyment of life, emotional distress, (both intentional and negligent), deprivation of his civil rights and loss of income and retirement benefits, rights and privileges.

4    That at all times herein mentioned the Defendants either individually/personally or through their employees, were acting under color of state law, acting in concert each with the other and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York when they engaged in the herein mention unlawful and discriminatory acts and practice against the Plaintiff.

5.    In addition to the facts alleged in the foregoing and following subparagraphs, the Defendants, are sued in their individual capacities and in their respective official capacities as agents, servants, licensees and/or employees of Defendants, The City of New York and New York City Police Department and for the purpose of the within action and at all times herein alleged, acted within the scope of their employment as agents, servants, licensees and/or employees of Defendants the City of New York and New York City Police Department.

6.    Defendants, The City of New York, New York City Police Department and New York City Advocates Office each individually employ more than fifteen (15) employees and is an "employer" as defined by Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(1), the Uniformed Services Employment and Reemployment Rights Action of 1994

3

(USERRA), 38 U.S.C. Sections 4301-4335; New York Executive Law Art. 15 (NY Human Rights Law), New York State Human Rights Law Sections 290-297and the Laws of the State of New York and United States of America.

## JURISDICTION

7.   This action is brought pursuant Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(1), 42 U.S.C. § 1983 and 42 U.S.C. § 1988; the Fourteenth Amendments to the United States Constitution, 28, U.S.C. §§ 1331 and 1343; Title 7 act of 1964; The Uniformed Services Employment and Reemployment Rights Action of 1994 (USERRA), 38 U.S.C. Sections 4301-4335; New York Executive Law Art. 15 (NY Human Rights Law), New York State Human Rights Law Sections 290-297, New York State law 215-a.

## VENUE

8.   Venue is properly laid in the Southern District of New York under U.S.C. § 1391(c), in that the defendant City of New York is a municipal corporation that resides in the Southern District of New York, a substantial amount of the events complain of herein occurred within the Southern District and under 28 U.S.C. Section 1391(b).

## PARTIES

9   Plaintiff, New York City Police Sergeant, Hector Rodriguez, (hereinafter "Plaintiff") is a male Hispanic of Puerto Rican National Origin, a Sergeant in the New York City Police Department with over seventeen (17) years of honorable service and a Commissioned Officer in the United States Armed Forces Reserves with over fifteen (15) years of Honorable Service.

4

10.     Plaintiff is a citizen of the United States, and at all relevant times herein is a resident of the State of New York.

11.     From 1990 to 1994 Plaintiff served as an enlisted member of the United States Marine Corps Reserves and in 1994, after attaining the rank of Lance Corporal Plaintiff was honorably discharged from the United States Marine Corps.

12.     Plaintiff is Latino, Spanish and/or Hispanic and, as such, is a member of a protected class under the laws and Constitution of the United States of America and the laws and Constitution of the State of New York.

14.     Plaintiff is a New York City Police Department and has been employed by the New York City Police Department ("NYPD") since June 30, 1995, and despite the fact that Plaintiff successfully passed the Lieutenant examination in 2006, the Defendant, the New York City Police Department has intentionally elected not to promote the Plaintiff to his duly acquired rank of Lieutenant and as such, the Plaintiff currently holds the rank of Sergeant in the New York City Police Department.

15.     The Plaintiff has a Bachelor's Degree in Criminal Justice from John Jay College and a Masters Degree from Columbia University, in Public Administration. He is a Commissioned Officer in the United States Naval Reserves.

14.     From 2005-2006, The Plaintiff served a tour of active duty in Iraq and has served intermittent tours of active duty lasting continuously for thirty or more days since 2006 to present.

5

15.     The Plaintiff currently serves in the United States Navy Reserves and as such is required to serve generally at a minimum one weekend per month and two years annually to satisfy his reserves military service obligations.

16.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

17.     Defendant CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

18.     Defendant CITY OF NEW YORK maintains the New York City Police Department Advocates' Office, a duly authorized law office and/or public authority and/or law enforcement office acting under the direction and supervision of the aforementioned municipal corporation and as Agent of the Defendant, The City of New York and New York City Police Department, perform all functions consistent with the prosecution and enforcement of New York City and New York City Police Department rules and regulations relative to New York City Police Officers.

19.     Defendant NEW YORK CITY POLICE DEPARTMENT is an agency of Defendant the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York.

20.     Defendant the NEW YORK CITY POLICE DEPARTMENT ADVOCATE'S OFFICE is an agency of Defendants the City of New York and the New York City Police

6

Department, existing and operating by virtue of the laws of the State of New York and the City of New York.

21.    Defendant DEPUTY INSPECTOR MATTHEW HYLAND, individually and in his official capacity and as employee/agent of the Defendant, The City of New York and New York City Police Department; CAPTAIN S. CORRADO, individually and in his official capacity as an employee/agent of the Defendant, The City of New York and New York City Police Department; LIEUTENANT LOUIS DE CEGLIE, individually and in his official capacity as an employee/agent of the Defendant, The City of New York and New York City Police Department and SERGEANT LARRY FLUNORY individually and in his official capacity as an employee/agent of the Defendant, The City of New York and New York City Police Department and as Defendants' duly sworn police officers, agents, servants, employees of the City of New York and/or New York City Police Department, at all times herein mentioned, are agents, servants and/or employees of the Defendants the City of New York and the New York City Police Department and were acting in their individual capacity and/or in their official capacities as agents, servants and/or employees in their respective official capacity with all the actual and/or perceived/apparent authority granted, allotted, entrusted to them by the City of New York and/or New York City Police Department in accordance with their official duties, positions, ranks and titles as New York City Police Officers.

22.    Defendant DEPUTY COMMISSIONER ATTORNEY JULIE L. SCHWARTZ individually and in her official capacity as employee/agent of the Defendant, The City of New York and New York City Police Department, the New York City Police Department Advocate's Office; Defendant ATTORNEY LISA BLAND individually and in her official capacity as employee/agent of the Defendant, The City of New York and New York City Police Department,

the New York Police Department Advocate's Office and as Defendants' duly sworn officers of the court, officers, agents, servants, employees of the City of New York, New York City Police Department and/or New York City Police Department Advocates Office, at all times herein mentioned, are agents, servants and/or employees of Defendants the City of New York, the New York City Police Department and the New York City Police Department Advocate's Office and were acting in their individual capacity and/or as agents, servants, employees in their respective official capacities with all the actual and/or perceived/apparent authority granted, allotted, entrusted to them by the City of New York, New York City Police Department and/or New York City Police Department Advocate's Office in accordance with their official duties, positions, ranks and titles.

23.     Defendants and "JOHN DOES" and "JANE DOES", names being fictitious intended to be officers/representatives/agents/servants of Defendants the City of New York, the New York City Police Department and/or New York City Police Department Advocates' Office individually and in their official capacity and/or as agents, servants, employees in their respective official capacity with all the actual and/or perceived/apparent authority granted, allotted, entrusted to them by the City of New York and/or New York City Police Department in according with their official duties and titles.

24.     That at all times herein mentioned the Defendants either individually/personally or through their employees, were acting under color of state law, acting in concert each with the other and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York when they engaged in the herein mention unlawful and discriminatory acts and practice against the Plaintiff.

8

25.     In addition to the facts alleged in the foregoing and following subparagraphs, the Defendants, are sued in their individual capacities and in their respective official capacities as agents, servants, licensees and/or employees of Defendants, The City of New York and New York City Police Department and for the purpose of the within action and at all times herein alleged, acted within the scope of their employment as agents, servants, licensees and/or employees of Defendants the City of New York and New York City Police Department.

26.     That at all times herein mentioned it is the custom and practice of the Defendants to discrimination against individuals, as Plaintiff, based upon race, color, national origin, ethnicity in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Sections 19103, 19103(a), 2000, 2000(e), 2000(e)(3), 2000(e)-2(a)(I).

27.     That at all times herein mentioned it is the custom and practice of the Defendants to discrimination against individuals, as Plaintiff, of Puerto Rican National Origin.

28.     That at all times herein mentioned it is the custom and practice of the Defendants to discriminate against, create an unlawful hostile work environment, unlawfully retaliate against and unlawfully treat disparately individuals like the Plaintiff herein, in violation of the laws and the Constitution of the State of New York and the laws and the Constitution of the United States of America and in violation of individual, as the Plaintiff, State and Federal Constitutional Right to Equal Protection as guaranteed by the 14th Amendment of the Constitution of the United States of America, in violation of New York Executive Law Art. 15 (NY Human Rights Law) and in violation of New York State Human Rights Law Sections 290-297).

29.     That at all times herein mentioned it is the custom and practice of the Defendants to discrimination against individuals and to deprive individuals, as the Plaintiff, proprietary

9

interest in acquired rank/title/position without due process of law in violation of the State and Federal Constitutional Rights.

30.     That at all times herein mentioned it is the custom and practice of the Defendants to discrimination against individuals and to deprive individuals, as the Plaintiff; discrimination against Plaintiff based upon his service in the United States Armed Forces in violation 38 U.S.C. Sections 4301-4335, the Uniformed Services Employment and Reemployment Rights Action of 1994 (USERRA).

## EXHAUSTION OF CIVIL ADMINISTRATIVE PROCEDURES

31.     Plaintiff timely filed his complaint with the Equal Employment Opportunity Commission (EEOC) -a charge of discrimination against Defendants based upon his race, national origin, retaliation, disparate treatment and/or hostile work environment against Defendants. Plaintiff received a Notice of the Right to Sue from the EEOC and commenced the within action within 90 days of the receipt of his right to sue letter from the EEOC. (Annexed hereto and made a part hereof as Exhibit "A" are copies of Plaintiff's EEOC Charge and Notice of Right to Sue Letter).

## NOTICE OF CLAIM

32.     Plaintiff, in furtherance of his causes of action, timely filed a Notice of Claim against the City of New York in compliance with General Municipal Law Section 50.

33.     More than 30 days have elapsed since service of said Notice of Claim and the City of New York has failed to pay or adjust the Plaintiffs claim.

34.     This action has been commenced within one year and ninety days after the happening of the events, as stated in said Notice of Claim, upon which these claims arise. (Annexed hereto and made a part hereof as Exhibit "B" is a copy of said Notice of Claim.)

## JURY DEMAND

35.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## FACTUAL AND GENERAL ALLEGATIONS

36.     From 2006 to 2008 Plaintiff served as the Patrol Supervisor in the 52nd. Precinct under Defendant Captain Derrick S. Corrado.

37.     From 2005-2006, the Plaintiff served a tour of active duty in Iraq.

38.     Upon return to the New York City Police Department after the foregoing military duty, Defendant Captain Derrick Carrado stated in sum and substance to Plaintiff that Plaintiff was "scamming" the "Department" (The New York City Police Department) by being called to and servicing on active duty military service in the United States Military.   Plaintiff interpreted and received the foregoing comment as an undisputed clear, adverse remark/slur and an act of unlawful discrimination against him because of his service in the United States military reserve.

39.     Subsequent thereto and continuing until approximately 2007-2008, each time the Plaintiff presented military orders or requested permission from Defendant Captain Derrick Carrado to serve on military duty, same defendant would comment in sum and substance that the Plaintiff was "continuing his scam--scamming" the Police Department and same Defendant sought to and at times denied the Plaintiff the opportunity to serve on Military duty; would treat Plaintiff adversely and/or would create a hostile work environment, which included racially charged and offensive at/towards/in reference to Plaintiff Hector Rodriguez based upon based upon Plaintiff's race, national origin, ethincity and based upon Plaintiff's service in the United States Military.

11

40.    On one particular occasion in approximately 2007-2008, some of the Police Officers that Plaintiff was in charge of engaged in a motor vehicle car chase with some suspects and during that encounter, the police vehicle sustained scrapes and scratches. The suspects were apprehended and a gun was recovered from the suspects' vehicle. Defendant Derrick Corrado sought to punish the officers who had successfully recovered the weapon from the suspects' because of the scratches and scrapes the vehicle sustained during the process. When the Plaintiff sought to explain to the Defendant Captain Derrick Corrado that the officers should not be punished for their acts of bravery, same Defendant became irate and angry at the Plaintiff and indicated to the Plaintiff in sum and substance that he is only standing up for the officers because Plaintiff is trying to act like this is some kind of band of brothers because Plaintiff is in the military.    Plaintiff interpreted and received the foregoing comment as an undisputed clear, adverse remark/slur and an act of unlawful discrimination against him because of his service in the United States military reserve.

41.    While Plaintiff was always professional and respectful to the Defendant Captain Derrick Corrado, throughout their entire time working together, same Defendant continuously created a hostile work environment for the Plaintiff and on a number of occasion stated to the Plaintiff that the Plaintiff was too ambitious and that the Plaintiff should give it up because "your kind"—referring to Spanish/Latino/Hispanic people-- will never run the "Department" someday. That Plaintiff interpreted and received the foregoing comment as an undisputed clear, racial slur and act of unlawful discrimination against him because he is Hispanic/Latino

42.    During the foregoing period, from 2005-approximately 2007-2008 and to present, Plaintiff complained to his chain of command about the adverse/hostile treatment and the constant adverse remarks that Defendant Captain Derrick Carrodo repeatedly stated to the

12

Plaintiff, including remarks relative to the Plaintiff's military service and Plaintiff's race; to no avail.

43.     In November of 2006, Plaintiff took the New York City Police Department Lieutenant examination and in late 2007 to early 2008, he learned that he had successfully passed the Lieutenant examination.

44.     In late approximately 2007-2008, Defendant Captain Derrick Corrado was reassigned to the Internal Affairs Bureau, and as such, Plaintiff was no longer within the chain of command of the Defendant Captain Derrick Corrado.

45.     Unbeknownst to Plaintiff at that time, on or about July 23, 2008, the Defendants the City of New York and New York City Police Department received a fax informing same defendants that during an investigation conducted by the Drug Enforcement Agency, San Diego Division, former New York City Police Officer Israel Sanchez (hereinafter "Informant") as arrested and subsequently pled guilty to allegations relative to the distribution of steroids and growth hormones.   Unbeknownst, to the Plaintiff at that time and continuing for a period of at least two years thereafter, based upon the foregoing fax, Defendants commenced an investigation of the Plaintiff relative to the use and possession of a controlled substance to wit: anabolic steroids.

46.     According to the Defendants The City of New York and New York City Police Department, the informant facing several years of incarceration based upon the charges filed against him, through a cooperation agreement with the Drug Enforcement Agency, sought to secure a no jail sentence or a significantly reduced period of incarceration, indicated that he had provided personal use amounts of steroids to Sergeant Hector Rodriguez in January of 2007.

13

47. In a sworn testimony at New York City Departmental Hearing relative to the Plaintiff, conducted in on or about February of 2013, Drug Enforcement Agent Charles Manning testified in sum and substance that as part of the cooperation agreement with the informant, the Drug Enforcement Agency only conducted one proffer session with same informant and that during that session the informant did not say he provided personal use amounts of steroids to Sergeant Hector Rodriguez in January of 2007, but rather stated that he, the informant, directed an individual name Charles Pritchett to mail personal use amounts of steroids to a New York City Police Officer name Hector Hernandez.

48. At same Departmental Hearing, Agent Manning's testified in sum and substance that, he was the one who after reviewing the informant's email did not see any emails relative to a Hector Hernandez, but saw emails relative to Hector Rodriguez and without speaking directly to the informant again, concluded that the informant must have meant Hector Rodriguez, not Hector Hernandez, relative to the steroid use.

49. Based upon the foregoing information the defendants, the City of New York and New York City Police Department commenced a formal investigation of the Plaintiff relative to the possession and use of steroids and on or about August 29, 2008, Defendant New York City Police Sergeant Larry Flunory (hereinafter "Defendant Flunory") of the New York City Police Department Office of Internal Affairs, was assigned as the investigator with Defendants Lieutenant Patrick J. Hickey, Captain Derrick Carrado (the same Captain Derrick Carrado of Plaintiff's previous command) and Deputy Inspector Thomas Scollan having supervisory authority over the investigation.

50. On or about August 29, 2008, as apparently part of the investigation, Defendant, Flunory conducted a DMV and personal profile inquiry of the Plaintiff which included accessing

DMV records for vehicle information, driver's license information, gun registry records relative to the Plaintiff and accessing Plaintiff's Police Department records to secure personal information about the Plaintiff, including Plaintiff's home address of 13 Bernadette Way Washingtonville, New York 10992.  The foregoing was approved and signed off by Defendants Lieutenant Patrick J. Hickey, Captain Derrick Carrado and Deputy Inspector Thomas Scollan.

51.    On or about September 19, 2008, Defendant Flunory went the Informant's house at 1784 Mountain Road Ottisville, New York and conducted an interview relative to the investigation of Plaintiff.  During same interview, the Informant indicated that he never met the Plaintiff personally and was only introduced to the Plaintiff by a former New York City Police Officer, Rafael Gonzalez.  The Informant further indicated that he was arrested in September of 2007, that he was involved in an international buying and selling steroids operation which included countries like China and Mexico and that he had already pled guilty and that as part of his cooperation agreement he was facing a period of incarceration of four years, but that was trying to get his sentence reduced by cooperating further with the Drug Enforcement Agency and other law enforcement agencies.  During same interview, to further his self-serving goal of securing a lower sentence, the Informant stated that he was willing to "fully" cooperate with the Defendants, the City of New York and New York City Police Department relative to the investigation of the Plaintiff.  Defendant Flunory suggested to the Informant that he would need the Informant in the future for a controlled telephone call to the Plaintiff.  In response, the Informant indicated that the Informant did not think the controlled telephone call would be helpful because he believe that former New York City Police Officer Rafael Gonzalez was aware that the Informant had been arrested.  Throughout the course of the Investigation, which spanned from 2008 to 2013, Defendant Flunory never once followed up on making efforts to conduct a

15

controlled telephone call with the Informant. The foregoing was approved and signed off by Defendants Lieutenant Patrick J. Hickey, Captain Derrick Corrado and Deputy Inspector Thomas Scollan.

52.    On October 25, 2008, Defendant Flunory was informed by Drug Enforcement Agent Manning that the Informant was indicted in San Diego on charges of Conspiracy to import anabolic steroids, conspiracy to launder money and conspiracy to distribute steroids; that the Informant already pled guilty with the Informant's sentence to be determined by the level of cooperation; that the investigation that led to the Informant's arrest stemmed from an internet steroid investigation in Mexico which led to an investigation of internet steroid involving China and that during the course of the investigation, the Drug Enforcement Agency had actually purchased steroids from the Informant.   The foregoing was approved and signed off by Defendants Lieutenant Patrick J. Hickey, Captain Derrick Corrado and Scollan knew that the Plaintiff had successfully passed both tests.

53.    On or about October 6, 2008, at 11:30pm, Defendant Flunory accompanied by Defendant Lieutenant Patrick Hickey, (hereinafter "Defendant Hickey") travelled to Plaintiff's address upstate New York at for the purpose of observing the Plaintiff.  The foregoing was approved and signed off by Defendant, Hickey and Captain Derrick Corrado, (hereinafter "Defendant Corrado").

54.    On or about October 12, 2008, at approximately 2:00 pm, Defendant Hickey conducted a team leader review of the investigation relative to the Plaintiff and instructed Defendant Flunory to continue conducting surveillance of the Plaintiff's residence and to pick up and remove garbage from Plaintiff's garbage from his residence and on October 20, 2008, approximately 7:40 pm, Defendant Flunory accompanied by Sergeant Hall, travelled again

upstate to Plaintiff's residence and did not detect/discover any illegal/improper activity by the Plaintiff.; specifically they did not detect/discover any evidence that would support their investigation of the Plaintiff.

55.    During the course of the foregoing investigation, the City of New York and New York City Police Department directed/ordered the Plaintiff to submit to at least two urine exams where it is believed that The City of New York and the New York City Police Department tested the Plaintiff for use of controlled substance including the use of anabolic steroids--the results of which come back clear/negative, undoubtedly and unequivocally confirming that the Plaintiff had not, did not and was not using any controlled substance including anabolic steroids. Specifically, on or about November 25, 2008, Defendants the City of New York and New York City Police Department selected the Plaintiff for a "random OCCB dole test and steroid test..." and "He [Plaintiff} passed both tests." The Defendants New York City, New York City Police Department, Defendants Flunory, Corrado, Hickey knew of the foregoing. In addition at the time of the commencement of the investigation of the Plaintiff and throughout that entire period, the Defendants herein named, knew and had reasons to know that the Plaintiff was a member of the United States Navy Reserves and, as such, was subjected to periodic and routine random drug tests, including test for the use of anabolic steroids.

56.    On or about November 15, 2008, Defendant Flunory sought to contact the Informant by telephone at three different telephone numbers and was unable to contact the Informant and did not receive a return call from the Informant. Defendants Hickey and Carrado knew of and signed off on the foregoing.

57.    On November 18, 2008, Defendant Flunory conducted a background investigation of the Plaintiff's personnel record of the New York City Police Department and determined that

17

the Plaintiff was appointed as a Police Officer on June 30, 1995; that the Plaintiff had effected a total of Two Hundred and Nineteen (219) arrest which included Seventy-Four (74) Felonies, One Hundred and Forty-Three Misdemeanors (143), Two (2) Infractions and Ten (10) Resisting Arrests.

58.    On December 9, 2008, at approximately 11:05pm, unbeknownst to the Plaintiff at that time, Defendants Flunory and Hickey, along with Sergeant Staudinger and Sergeant Rothenbucker removed garbage from in front of the Plaintiff's house and subsequently inspected same garbage and based upon that inspection, Defendant Flunory commented that "The I/O [he the Investigating Officer] observed no items that support the aforementioned allegation" of alleged possession and/or use of a controlled substance to wit: anabolic steroids.

59.    On December 11, 2008, Defendant Flunory reviewed the Organized Crime Control Bureau random dole tests for the years 2006, 2007 and 2008, relative to the Plaintiff and determined that Plaintiff had submitted to random dole test on November 19, 2008, which provided Plaintiff also successfully passed.  Defendants Hickey and Corrado knew of the foregoing. On December 11, 2008, Defendant Flunory also learned that the Informant's license was going to be suspended on January 7, 2009, for failure to answer summonses. Defendants Hickey and Corrado knew of the foregoing.

60.    On December 12, 2008, Defendant Flunory along with Sergeant Staudinger, travelled to Bronz Vice to inspect the roll call logs relative to the Plaintiff where Plaintiff was serving as the Team Supervisor to a number of Police Officers and Detective. This investigation revealed no inappropriate and/or improper conduct by the Plaintiff and further, did not reveal anything that supported the allegations against the Plaintiff.   Defendants Hickey and Carrado knew of the foregoing.

61.     Unbeknownst to the Plaintiff, on December 14, 2008, from approximately 8:00 pm to 10:00 pm, Defendant Flunory Sergeant Mattioli travelled to the Plaintiff's residence upstate New York for the purpose of conducting surveillance of the Plaintiff's home.   During that investigation, Defendant Flunory looked inside of Plaintiff's house and observed what he determined to be an "unknown individual walking throughout the house..." and Defendant Flunory was able to "observe an NFL Football game being broadcast on the television in the family room." During this surveillance, Defendant Flunory did not discovery any evidence that supported the allegations that the Plaintiff possessed and/or used a controlled substance to wit: anabolic steroids. Defendants Hickey and Corrado knew of the foregoing.

62.     On December 16, 2008, Defendant Hickey conducted case review of the investigation relative to the Plaintiff and directed Defendant Flunory to continue surveillance of the Plaintiff and to arrange for a second pickup of garbage from the Plaintiff's residence.

63.     On December 27, 2008, Defendant Flunory contacted the Informant and same Informant that reiterated that he already pled guilty and was facing a period of incarceration of four years.   The Informant further Defendant Flunory that his next court date would be in February of 2009, but does not think that he would start his sentence on that date because he was still cooperating with the Drug Enforcement Agency to further is self-serving goal of securing a lower sentence that four years.   In addition, the Informant provided Defendant Flunory with the contact telephone number for DEA Agent Manning—who was the assigned Agent to the Informant's case.

64.     On January 2, 2009, Defendant Flunory contacted DEA Agent Manning and was informed that the Informant was cooperating with the DEA on another internet steroid investigation and that based upon his, agent Manning's investigation of the Informant's hush

19

mail account, the Informant never personally mailed any controlled substance and/or anabolic steroids to the Plaintiff, but rather directed another person that the informant referred to as "his source" to send human growth hormones to the Plaintiff. Defendants Hickey and Carrado knew of the foregoing.

65.     On January 2, 2009, Defendant Flunory conducted a second I-Pro check of the Plaintiff to determine if there were any new cases or similar allegations against the Plaintiff relative to possession and/or use of steroids and discovered that there were no other cases and/or similar allegations against the Plaintiff relative to possession and use of steroids.   Defendants Hickey and Corrado knew of the foregoing.

66.     On January 11, 2009, Defendant Hickey conducted a team leader review of the investigation relative to the Plaintiff and directed Flunory to prepare to conduct a second garbage pick-up from the Plaintiff's residence and to continue surveillance of the Plaintiff.

67     On January 15, 2009, Defendant upgraded the case against the Plaintiff B3 to a B2 investigation after consulting with Defendants Hickey and Corrado. According to Defendant Flunory, this determination was based upon internet records showing steroids was mailed to the Plaintiff's residence, a number that the Informant claimed to be Plaintiff's telephone number in the informant's cell phone, the Informant stating that he the Informant sold steroids to the Plaintiff and per email communication, a Postal tracking number for a delivery of what defendant Flunory deemed to be "steroids" to the Plaintiff's residence.   The foregoing determination to upgrade the investigation against Plaintiff and the conclusion that any substance that was purportedly mailed to the Plaintiff was reached by Defendants Flunory, Hickey and Corrado without recovering, touching viewing any physical evidence of any substance which purported to be steroids and without any chemical test being performed on any substance at all

and without conferring with the Post Office to determine if the tracking number was valid and as

to whether the Post Office could confer if any was actually mailed to the Plaintiff's house under

same tracking number.    In fact, Defendants Flunory, Hickey and Corrado based the foregoing

conclusion, on the words of and information obtained solely from the Informant, a cooperating

witness, who had directly informed them or they learned from each other, was a cooperating

witness for the sole purpose of reducing his potential period of incarceration.

68.    On February 3, 2009, Defendant Flunory received case paperwork from Agent

Manning which included emails from the Informant to an individual name Klaus Jurgen Pritschet

with a date of birth of 6/9/1980, with a home address of 250 Charleston Avenue Romeovill, Il

60446.    At the time of learning this information, it is believed that Defendants Flunory, Hickey,

and Carrado, knew and/or had reasons to know that Mr. Pritschet was never arrested by any law

enforcement agency relative to the investigation involving the Information and the sale and

distribution of anabolic steroids and/or any controlled substance.    Nonetheless, the without

speaking with Mr. Pritschet or making any effort to contact him, based upon the Informant's

email, Defendant Flunory concluded and Defendants Hickey and Carrado signed off on a

determination by Defendant Flunory that Mr. Pritschet sells Human Growth Hormones  and that

Mr. Pritschet did in fact send a supply of Human Growth Hormones to the Plaintiff's address.

69.    On February 5, 2009, Defendant Flunory travelled alone to the Informant's house

upstate and conducted an interview of the informant without any other officer present.  During

that conversation, according to Defendant Flunory, the Information told him that he was still

cooperating with the DEA for the self-serving purpose of reducing his four year period of

incarceration; that he never met the Plaintiff in person; that in January 2007, the Plaintiff ordered

Human Growth Hormones for about Three Hundred and Fifty Dollars ($350.00); that in May of

2007, and the Plaintiff ordered a steroid kit for an "unknown" price. In addition, even though the Informant previously not only told Defendant Flunory that the Informant had a "source" mailed the items to the Plaintiff, but Defendant Flunory knew and/or had reasons to know that the Informant also told Agent Manning that it was Mr. Pritschet, who mailed the items to the Plaintiff, during that interview, according to Defendant Flunory, the Informant claimed that he was the one who mailed steroids to the Plaintiff and that the Informant's supplier, mailed the Human Growth Hormones, to the Plaintiff. Defendant Flunory never questioned the Informant about this inconsistency and Defendants Hickey and Corrado knew of the foregoing and signed off on it.

70.     On February 5, 2009, Defendant Flunory along with Sergeant Mattioli, visited the following locations in upstate New York for the purpose of investigation whether the Plaintiff frequented any of them:

> 1:30 pm. ProActive Health and Fitness, 26 West Main Street, Washingtonville,
>
> 2:35 pm. Gold's Gym, 0 route 17M, Harriman, New York
>
> 5:15 pm. Straub's Fitness Center 791 Route 17M, Monroe, New York.

Based upon Defendant Flunory's investigation, the Plaintiff did not frequent/visit and no observed his vehicle in the parking lot or immediate vicinity of the foregoing fitness center. Defendants Hickey and Corrado knew of the foregoing.

71.     On February 18, 2009, Defendant Flunory was told by United States Postal Inspector Robert Cohen that the search for the tracking number that Defendant Flunory had received from the Informant and upon which Defendant Flunory, in consultation with Defendants Hickey and Corrado, upgraded the investigation against the Plaintiff to B2, met with negative results. According to Defendant Flunory, Postal Inspector Cohen indicated that the

tracking number ED754401730US appeared to be a valid tracking number, but that he did not and could not locate any evidence/paperwork on the aforementioned number. Defendants Hickey and Flunory knew of the foregoing.

72.     On February 17, 2009, at 6:30 pm., another case investigator, Sergeant Arthury Staudinger accompanied by Sergeant Vega travelled upstate New York to Plaintiff's house to conduct surveillance of the Plaintiff. After observing Plaintiff's residence for approximately Thirty Minutes without any sign of Plaintiff's vehicle, they then proceeded to canvas a local fitness center—a 24 hour gym located at 9 Fairlawn Drive and did not observed Plaintiff's vehicle. Thereafter, they proceeded to Bronx Vice Enforcement Unit, where Plaintiff worked as Supervisor, for the Defendants the City of New York and New York City Police Department, where they observed the Plaintiff's vehicle. Defendants Hickey and Corrado knew and signed off on the foregoing.

73.     On February 16, 2009, Defendant Flunory, instructed Detective Corbett to perform an E-Justice criminal history check of Klavs Jurget Pritchet, date of birth June 9, 1980 of 250 Charleston Avenue, Romeoville, IL 60446 and it was revealed that the Mr. Pritchet did not have a criminal record. In addition, Defendant Flunory was informed by Agent Manning that Mr. Pritchet was not arrested because, during the course of Agent Mannings investigation, Operation RAW DEAL,--in international case targeting anabolic steroids, which resulted in over One Hundred search and arrests warrants,  the allegations against Mr. Pritchet related to human growth harmone and not steroids.  Defendants Hickey and Carrado knew of the foregoing.

74.     On February 18, 2009, at 11:45 pm., Defendant Flunory and other New York City Police Officers, travelled upstate to the Plaintiff's house to conduct a second pick-up of the Plaintiff's garbage and departed the Plaintiff's residence with two plastic bags of garbage which

23

was subsequently searched and nothing improper and no evidence was recovered to support any unlawful acts by the Plaintiff and more specifically, no evidence was recovered to support the allegations that Plaintiff possessed and/or use a controlled substance to wit: anabolic steroids. Defendants Hickey and Carrado knew of the foregoing.

75.    On February 18, 2009, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and directed Defendant Flunory to continue surveillance of the Plaintiff.

76.    On February 13, 2009, Defendant Flunory along with Sergeant Staudinger visited Postal Inspector Cohen's office at JFK Airport to gather more information relative to the mail tracking number found on the Informant's email and provided to them by the Informant. Inspector Cohen checked the Postal Department Computer data based and informed Defendant Flunory that the number was not in the Postal Department data base. Defendants Hickey and Corrado knew of the foregoing.

77.    On February 20, 2009, Defendant Flunory a "49" – a New York City Police Department subpoena or its equivalent for personal and private information of the Plaintiff to wit: Plaintiff's Direct Deposit Information; Public Record Search of the Plaintiff's personal finances and a Financial Inquiry of any and all of Plaintiff's financial information. Defendants Hickey and Corrado approved and signed off on the foregoing.

78.    On February 23, 2009, Defendant Flunory along with Sergeant Mattioli, visited the following locations in upstate New York for the purpose of investigation whether the Plaintiff frequented any of them:

> 10:00 am ProActive Health and Fitness, 26 West Main Street, Washingtonville,
>
> 10:50 am Gold's Gym, 0 route 17M, Harriman, New York

24

11:30 am Straub's Fitness Center 791 Route 17M, Monroe, New York.

Based upon Defendant Flunory's investigation, the Plaintiff did not frequent/visit and no observed his vehicle in the parking lot or immediate vicinity of the foregoing fitness center. Defendants Hickey and Corrado knew of the foregoing.

79.     On March 3, 2009, Defendant, Flunory after conferring with the team leader, Defendant Hickey, again upgraded the case against the Plaintiff from a B3 to a B2 investigation. This determination, according to Defendant Flunory, again was based upon internet records showing steroids was mailed to the Plaintiff's residence, a number that the Informant claimed to be Plaintiff's telephone number in the informant's cell phone, the Informant stating that he the Informant sold steroids to the Plaintiff and per email communication, a Postal tracking number, which twice could not be verified by the Postal Inspector, Mr. Cohen, for a delivery of what defendant Flunory deemed to be "steroids" to the Plaintiff's residence. The foregoing determination to upgrade the investigation against Plaintiff and the conclusion that any substance that was purportedly mailed to the Plaintiff was reached by Defendants Flunory, Hickey and Corrado without recovering, touching viewing any physical evidence of any substance which purported to be steroids and without any chemical test being performed on any substance at all and without conferring with the Post Office to determine if the tracking number was valid and as to whether the Post Office could confer if any was actually mailed to the Plaintiff's house under same tracking number.    In fact, Defendants Flunory, Hickey and Corrado based the foregoing conclusion, on the words of and information obtained solely from the Informant, a cooperating witness, who had directly informed them or they learned from each other, was a cooperating witness for the sole purpose of reducing his potential period of incarceration. Defendants Hickey and Corrado knew of and/or approved the foregoing.

80.     On March 3, 2009, Defendant Flunory and Sergeant Staudinger visited Headquarters, New York City Police Department, One Police Plaza, to inquire about the dole history of the Plaintiff and learned that Plaintiff was subjected to a random dole test on December 11, 2009 and that Plaintiff had successfully passed that test. Defendants Hickey and Corrado knew of the foregoing.

81.     On March 5, 2009, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and thereafter, directed Defendant Flunory to continue with surveillance of the Plaintiff and to confer with the Orange County District Attorney's Office relative to initiating a criminal prosecution of the Plaintiff for alleged violation of New York Penal Law; Possession of a Controlled Substance to wit: anabolic steroids. The Defendant Hickey directed the foregoing, even though same Defendant knew and/or had reasons to know that at no time throughout their investigation at that time, did they recover any substance that appeared to be illegal or any substance that could be tested from the Plaintiff or the Plaintiff's residence to support bringing charges much less a conviction of Criminal Possession of a Controlled Substance.

82.     On March 20, 2009, from 2:00 pm., to 4:00pm Defendant Flunory along with Sergeant Staudinger reported to Plaintiff's house upstate, New York for the purpose of conducted surveillance of the Plaintiff. During the foregoing Defendant Flunory noticed the Plaintiff's garage door and took a number of photographs of the Plaintiff's house. Thereafter, they reported to the post office relative to Plaintiff's house address at 22 Brotherhood Plaza, Washintonville, New York 10992 and conferred with Post Office Manager Jerry Glickman and met with negative results as to any mail via the tracking number provided to them by the Informant.

26

83.    On March 28, 2009, Defendant Flunory reported to the Defendant, the City of New York, New York City Police Department, the Advocate's Office and met with Defendant, Attorney Lisa Bland, (Hereinafter, "Defendant Bland").    During that meeting based upon Defendant's Flunory's own account, Defendant Bland told Defendant Flunory "...this case has a lot of circumstantial evidence."    Defendant Bland further directed Defendant Flunory to "...perform additional investigative steps to prove the subject [Plaintiff] officer did possess steroids".    Defendants Hickey and Corrado knew of and/or signed off on the foregoing.

84.    On April 2, 2009, Defendant Flunory conferred with Internal Affairs Bureau Financial Police Department requesting the status of public financial record and the personal financial record of the Plaintiff.    Defendants Hickey and Corrado knew of and/or signed off on the foregoing.

85.    On April 4, 2009, Defendant Hickey conducted another case review of the investigation relative to the Plaintiff and on same date directed Defendant Flunory to obtain the cover mail the Plaintiff's residence, continue with the surveillance of the Plaintiff and to further confer with the District Attorney's Office of Orange County, within the jurisdiction where Plaintiff resides, in an effort to initiate the criminal prosecution of the Plaintiff relative to alleged New York State Penal Law violation of Criminal Possession of a Controlled Substance to wit: anabolic steroids and on April 15, 2009, Defendant Flunory did in fact confer with the Orange County District Attorney's Office regarding the investigation of the Plaintiff.    Defendant Flunory was informed by the Orange County District Attorney's Office that they would review the case relative to the Plaintiff and make their own determination as to whether to proceed with an independent case and prosecution of the Plaintiff. Defendants Hickey and Carrado knew, approved and signed off on the foregoing.

86.    On April 24, 2009, Defendant Flunory again conferred with the Orange County District Attorney's Office relative to the criminal prosecution of the Plaintiff on charges relative to alleged New York State Penal Law violation of Criminal Possession of a Controlled Substance to wit: anabolic steroids and again on April 26, 2009, Defendant Flunory again conferred with the Orange County District Attorney's Office relative to the criminal prosecution of the Plaintiff and was informed that the case against the Plaintiff was in review. Defendants Hickey and Carrado knew, approved and signed off on the foregoing.

87.    May 5, 2009, Defendant Hickey again conducted a case review of the investigation relative to the Plaintiff and on same date directed Defendant Flunory to obtain the cover mail the Plaintiff's residence, continue with the surveillance of the Plaintiff and to further confer with the District Attorney's Office of Orange County, within the jurisdiction where Plaintiff resides, in an effort to initiate the criminal prosecution of the Plaintiff relative to alleged New York State Penal Law violation of Criminal Possession of a Controlled Substance to wit: anabolic steroids.

88.    On June 4, 2009, Defendant Hickey conducted yet another case review of the investigation relative to the Plaintiff and directed Defendant Flunory to again obtain the cover mail the Plaintiff's residence, continue with the surveillance of the Plaintiff and to further confer with the District Attorney's Office of Orange County.

89.    On June 12, 2009, Defendant Flunory made numerous attempts to contact the Informant to find out from the Informant if same Informant had any new information relative to the investigation of the Plaintiff and to find out when the Informant's next court date was. On that date, the Informant did not take Defendant Flunory's telephone call and did not return

28

Defendant Flunory's telephone call. Defendants Hickey and Corrado knew of and signed off on the foregoing.

90.     On June 23, 2009, the Informant finally returned Defendant Flunory's telephone call and during same the Informant informed Defendant Flunory that he did not have any new information relative to Plaintiff; that is next court date was July 27, 2009; and that he still did not believe a controlled telephone call to the Plaintiff would be "fruitful"—meaning it would not lead to incriminating statement from the Plaintiff to the Informant during that telephone call. Based upon Defendants Flunory, Hickey and Corrado training and experience, they knew and/or should have known that the Informant's reluctance to engage in a controlled telephone call may be indicative that the Informant knows that the Plaintiff did not buy or sought to buy anabolic steroids from the Informant and that the Informant only stated that the Plaintiff sought to obtain steroids from him in an effort to achieve his self-serving goal of securing a lesser sentence than the four years. Yet, Defendants Flunory, Hickey and Corrado intentionally and purposely ignored and/or neglected and/or refused to arrange a controlled telephone call because same Defendants did not want and did not try to obtain any evidence that would serve to exonerate the Plaintiff.

91.     On July 2, 2009, Defendant Flunory spoke with Agent Manning and was informed that the Informant was still assisting them with a separate ongoing steroid investigation and that the Informant would most likely not be sentenced on July 27, 2009. Defendants Hickey and Corroda knew of the foregoing.

92.     On 2, 2009, Defendant Hickey conducted yet another case review of the investigation relative to the Plaintiff and directed Defendant Hickey to again Defendant Hickey conducted another case review of the investigation relative to the Plaintiff and on same date

29

directed Defendant Flunory to obtain the cover mail the Plaintiff's residence, continue with the surveillance of the Plaintiff and to further confer with the District Attorney's Office of Orange County.

93.   On July 21, 2009, Defendant Flunory along with Defendant Hickey travelled upstate to 275 Main Street, Goshen, New York to confer with one of the Orange County District Attorney, Lori Goldberg relative to the criminal prosecution of the Plaintiff on charges of Criminal Possession of a Controlled Substance and was informed by Attorney Goldberg that she could not meet with them on that date as she was engaged in a homicide trial.   Defendant Corrado knew of the foregoing.

94.   On July 24, 2009, Defendant Flunory received the results from a conferral with the Internal Affairs Bureau Intelligence Department which indicated that same department did not have any adverse/negative information relative to the Plaintiff and on July 28, 2009, Defendant Flunory actually received the results of the personal financial record check of the Plaintiff of April 2, 2009, and that result indicated that Plaintiff's personal financial record did not have any suspicious activity relative to the matter of which Plaintiff was being investigated. Defendants Hickey and Corrado knew off, signed off and approved the foregoing.

95.   On August 4, 2009, Defendant Hickey conducted another case review of the investigation relative to the Plaintiff and after that review same defendant directed Defendant Flunory to again obtain the cover mail the Plaintiff's residence, continue with the surveillance of the Plaintiff and to further confer with the District Attorney's Office of Orange County.

96.   On August 26, 2009, Defendant Flunory received the results of a public record check of the Plaintiff that same defendant, with the approval of Defendants Hickey and Corrado, ordered on February 20, 2009, and the results indicated that Plaintiff had not engaged in any

suspicious activity and particularly, the results indicated that Plaintiff had not engaged in any suspicious activity relative to the matter of possession and use of a controlled substance to wit: anabolic steroids. Defendants Hickey and Corrado knew of, signed off on and approved the foregoing.

97.     On August 11, 2009, Defendant Flunory conferred with Assistant District Attorney of Orange County, Lori Goldberg, and was informed by ADA Goldberg that giving the lack of evidence that the Plaintiff had possessed and/or used a controlled substance to wit: anabolic steroids, the Office of the District Attorney of Orange County would not be seeking to initiate criminal prosecution against the Plaintiff. Thereafter, Defendant Flunory sought through repeated telephone calls and actual visits to the District Attorney's Office in Orange County to meet with ADA Goldberg relative to initiating criminal charges against the Plaintiff, to no avail.

98.     On or about August 11, 2009, Defendants Flunory, Hickey and Corrado realizing that their efforts to have the Plaintiff prosecuted criminally would not be realized in consultation with each other, Defendant Corrado directed Defendant Flunory to initiate New York City Police Department Patrol Guide Proceedings against the Plaintiff; which included compelling the Plaintiff to appear before them to give sworn testimony relative to their investigation.

99.     On August 18, 2009, Defendant Flunory conferred with Postal Inspector and Defendant Corrado, who at that time determined that a mail cover of the Plaintiff was no longer necessary and further directed the Plaintiff to again consult with the Orange County District Attorney's Office to determine whether they would prosecute the Plaintiff based upon circumstantial evidence, that according to Defendant, Corrado, their investigation revealed. Defendant Hickey knew of the foregoing.

31

100.   On August 28, 2009, Defendant Flunory along with Detective Janow, without the Plaintiff's permission and/or authority, accessed the Plaintiff's MySpace and Facebook pages and reviewed numerous pictures of the Plaintiff. During that intrusion, Defendant Flunory found a single picture where Plaintiff was without a shirt and found no evidence related to his investigation from invading Plaintiff's MySpace and Facebook pages without the Plaintiff's permission and authority.

101.   On September 4, 2009, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and after same review, he directed Defendant Flunory to interview the Plaintiff pursuant to New York City Police Department Patrol Guide 206-13 and to thereafter close the case.

102.   On September 30, 2009, Defendant Flunory along with Sergeant Staudinger conducted a hearing/questioning/interrogation of the Plaintiff pursuant to Defendants, the State of New York and New York City Police Department's Patrol Guide 206-13. During those proceedings, Plaintiff informed Defendant, Flunory that the only sustain that he ever sought to obtain was weightlifting supplements and proteins. During same proceedings, Plaintiff denied ordering, using, possessing or attempting to possess anabolic steroids, steroids and further denying ordering, using, possessing or attempting to possess human growth hormones. During this meeting, Plaintiff informed Defendant Flunory that he had successfully passed the New York City Police Department Lieutenant's exam and that Plaintiff wanted to ensure that the investigation did not adversely affect his promotion and was assured at that time by Defendant Flunory that based upon their investigation, it is clear that Plaintiff had not engaged in any wrongdoing, and as such, their investigation would not affect Plaintiff's promotion. Defendants, Hickey and Corrado knew of and approved the foregoing.

32

103.     On October 29, 2009, Defendant Flunory interviewed the Informant and the Informant indicated to the Defendant Flunory that he, the Informant, never sent and/or mailed steroids or human growth hormones to the Plaintiff. The Informant further informed Defendant Flunory that the Informant's next court date was in April 2010 and that the Informant was still cooperating in hopes of not serving any period of incarceration. Defendants Hickey and Corrado knew of, signed off on and approved the foregoing.

104.     On November 11, 2009, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and directed Defendant to close the investigation against the Plaintiff.

105.     On November 5, 2009, Defendant Flunory conferred with Defendant, Bland and during same Defendant Bland informed Defendant Flunory that she will charge the Plaintiff with Criminal Possession of a Controlled Substance in the 7th Degree and that to advance and prove those charges she would need the Informant to testify in the Departmental Hearing against the Plaintiff. Defendants Hickey and Corrado knew of the foregoing.

106.     On November 24, 2009, Defendant Flunory spoke with Agent Manning regarding having the Informant available to testify against the Plaintiff at a Departmental Hearing and was informed that the Informant was involved in other cases. Defendant Flunory then consulted with Defendant Bland regarding the foregoing and Defendant Bland informed Defendant Flunory that the Informant's testimony was mandatory in order to move forward with Departmental Hearings against the Plaintiff. Defendants Hickey and Corrado knew of, signed off on and approved the foregoing.

107.     On December 1, 2009, Defendant Hickey conducted a case review of the investigation and Defendant Flunory to confer with the DEA and on December 18, 2009,

33

Defendant Flunory consulted with Agent Manning. Agent Manning informed Defendant Flunory, the agreement was that the Informant would have to assist the Defendants, New York City and the New York City Police Department in their investigation of the Plaintiff and that the Informant had fulfilled his obligations under the agreement. Based upon Agent Manning's statement on or about December 18, 2009, that the Informant had fulfilled his obligations under the agreement, Defendants knew as of that date and even earlier that the Informant would not be available to testify against the Plaintiff at any future Departmental Hearings and further, all the Defendants knew as of December 18, 2009, and even earlier that based upon the Informant's own statement, he would not be able to testify at any future Departmental Hearings that he mailed or caused to be mailed to the Plaintiff's address anabolic steroids and/or human growth hormones.

108. On December 29, 2009, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and after same review, he directed Defendant Flunory to confer with the Defendants Bland of the Department Advocate's Office. And on January 7, 2009, Defendant Flunory prepared a request for charges and specification against the Plaintiff based upon allegations of steroids use. Defendants Hickey and Corrado knew of and approved this request.

109. On January 15, 2010, Defendant Flunory conferred with Sergeant April of IAB to ensure that Plaintiff would not be promoted to Lieutenant in light of their pending investigation against the Plaintiff. Defendants Hickey and Corrado knew of and approved the foregoing.

110. On January 15, 2010, Defendant Flunory conferred with PAA Smith of the Uniform Promotioons and was informed that the Plaintiff was listed as number Three Hundred and Twenty-Five for promotion to Lieutenant and that the Police Department was at that time at

list number Two Hundred and Fifty-Eight.   The purpose of Defendant Flunory's inquest as to the promotion status of the Plaintiff is that Defendant Flunory acting in concert with the other Defendants,  more specifically, Defendants Hickey and Corrado wanted to ensure that Plaintiff would not be promotion to the rank of Lieutenant.

111.   On January 28, 2010, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and after that review, directed Defendant Flunory to confer with Defendant Bland of the Advocate's Office.

112.   On February 2, 2010, Defendant Flunory conferred with Defendant Bland and another attorney at the Advocate's Office, Mr. Hiram Lopez.  During that meeting, Defendant Bland informed Defendant Flunory that she would no longer serve as the assigned attorney to the Plaintiff's case and that Mr. Hiram Lopez would assume the prosecution of the Plaintiff. Defendant Flunory then provided copies of his investigation file as to the Plaintiff to Mr. Lopez.

113.   On February 12, 2010 and February 19, 2010, Defendant Flunory attempted to contact Mr. Lopez to find out the status of the Department charges that he had requested and was not able to get in touch with Mr. Lopez.  Defendants Hickey and Flunory knew of and approved the foregoing.

114.   On February 25, 2010, and March 25, 2010, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and after each review he directed Defendant Flunory to confer with the Advocate's office.

115.   On April 9, 2010, Defendant Flunory attempted to contact Defendant Bland relative to the charges and he had requested to be drafted against the Plaintiff and was not able to get in contact with her.  Defendants Hickey and Corrado knew of and approved the foregoing.

116.    On April 16, 2010, Defendant Flunory learned from Defendant Bland that a decision had not yet been made regarding the appropriate charges to be filed against the Plaintiff. Defendant Hickey and Flunory knew of the foregoing.

117.    On April 23, 2010, Defendant Flunory conferred with Defendant Flunory where Defendant Hickey was specifically informed that the Advocate's Office had not yet reached a determination as to what charges to file against the Plaintiff. Defendant Hickey then instructed Defendant Flunory to "maintain regular contact" with the Department Advocate's Office until a determination was made.

118.    On April 25, 2010, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and after same review, instructed Defendant Flunory to confer with the Advocate's Office and to future confer with the Informant. Defendant Corrado knew of and approved the foregoing.

119.    On April 30, 2009, Defendant Flunory conferred with Defendant Bland and was specifically informed that in order for the Department Advocate's Office to make a decision as to whether to initiate charges against the Plaintiff, Defendant Flunory must first determine whether the Informant would cooperate by testifying in a Departmental trial against the Plaintiff and whether the DEA would allow the Informant to testify.   The reason that Defendant Bland directed the foregoing is because same Defendant knew based upon her legal training that there were significant shortcomings in proceeding with charges against the Plaintiff for Possession and Use of a Controlled Substance to wit: Anabolic Steroids and that without the Informant's testimony, she could not and should not in good faith move forward with any prosecution against the Plaintiff. Defendants Hickey and Corrado knew of and approved the foregoing.

36

120.    On May 6, 2010, Defendant Flunory along with Sergeant Staudinger, travelled upstate New York to the last known address of the Informant and was informed that the Informant no longer lived there; that the informant had moved to the Bronx to live with his mother and that the Informant was going through a divorce and that the house was in foreclosure. Defendants Hickey and Corrado knew of the foregoing.

121.    On May 7, 2010, Defendant Flunory along with Police Sergeant Staudinger travelled to 442 Jacskon Avenue, Apt. 3J, Bronx, New York where they spoke with the Informant who indicated to them that he would continue to cooperate and testify at a Departmental Hearing against the Plaintiff; that he was being sentenced on May 21, 2010; and that based upon his cooperation and continued cooperation, he anticipated receiving a sentence of one year and a day period of incarceration. Defendants Hickey and Corrado knew of and approved the foregoing.

122.    On May 5, 2010, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and thereafter directed Defendant Flunory to continue conferring with the Department Advocate's Office.

123.    On May 21, 2010, Defendant Flunory conferred with Defendant Bland in which Defendant Bland was informed that the Informant was willing to testify at a Departmental Hearing against the Plaintiff. Defendant informed Defendant Flunory that the Departmental Statute of Limitation had expired and, as such, the only charges that can be initiated against the Plaintiff were criminal charges and that a determination as to what action to take against the Plaintiff still had not been reached. Defendants Hickey and Corrado knew of and approved of the foregoing.

37

124.    On May 28, 2010, Defendant Flunory conducted a federal inmate computer check and discovered that the Informant had been sentenced and was incarcerated at the United States Penitentiary—Canaan located in Northwest Pennsylvania.

125.    On June 9, 2010, and on June 18, 2010, Defendant Flunory attempted to contact Defendant Bland but was unsuccessful.  On June 18, 2010, Defendant Hickey conducted a case review of the investigation relative to the Plaintiff and after same review, instructed Defendant Flunory to continue to confer with the Department Advocate's Office.

126.    On June 24, 2010, Defendant Flunory conferred with Defendant Bland in he was informed that a decision was made to charge the Plaintiff with Criminal Possession of a Controlled Substance to wit: anabolic steroids.

127.    Based upon information and belief provided by Defendant Bland, the decision to Charge the Plaintiff as outlined above was made by Defendant Julie Swartz (hereinafter Defendant Swartz) in consultation with Defendant Bland.

128.    At the time Defendants Bland and Swartz and all the other defendants decided to charge the Plaintiff with Criminal Possession of a Controlled Substance, the Defendants knew based upon their legal training and as officers of the court that pursuant to Section 75 of the Civil Service Law, the Department Advocate's Office must serve the Plaintiff with Charges and Specifications within eighteen (18) months of the occurrence of the alleged misconduct.  Same Defendants knew that at that time, the acts that gave rise to the investigation of the Plaintiff is alleged to have occurred on or about January to March of 2007, and as such, the Statute of Limitation was exhausted.

129.    At the time Defendants Bland and Swartz and the other Defendants decided to charge the Plaintiff with Criminal Possession of a Controlled Substance, in the 7th Degree, same

Defendants did so deliberately and intentionally to circumvent Section 75 of the Civil Service Law statute of limitation\ as according to that law, the Statute of limitation under that section does not apply where the misconduct charged would constitute a crime.

130.   Even though Defendants Bland and Swartz and all the other Defendants decided to charge the Plaintiff of an offense that would constitute a crime, based upon their training and experiences and as officers of the court, all the Defendants knew the following:

a.   That they did not have the quality and type of evidence against the Plaintiff to satisfy the prima facie elements of a violation of New York Penal Law Section 220.03 Criminal Possession of a Controlled Substance in the 7th Degree.

b.   Pursuant to New York State Penal Law Section 220.03, (CPCS 7th. Degree) the elements of the foregoing crime required 1) a knowing and 2) actual possession of a 3) controlled substance. As such, both defendants knew that they would have to prove that the Plaintiff knowingly and actually possessed a substance that based upon chemical and scientific tests was in fact a controlled substance to wit: anabolic steroids.

c.   Defendants knew that no substance at all was recovered from the Plaintiff and, as such, no scientific or chemical tests were performed by the Defendants on any substance at all relative to the investigation of the Plaintiff.

d.   Defendants knew that the Orange County District Attorney's Office had specifically rejected the prosecution of the Plaintiff based upon lack of

substantive evidence against the Plaintiff to support the allegation of criminal possession of a controlled substance.

e.    Defendants knew that the Informant indicated that he did not personally mailed steroids or human growth hormones to the Plaintiff and no one had confirmed at that time with Mr. Pritchet if he had in fact mailed steroids or human growth hormones to the Plaintiff.

131.    Irrespective of the foregoing, the Defendants Bland, Swartz, Flunory, Hickey and Corrado acting in concert one each with the other, moved forward to initiate charges of Criminal Possession of a Controlled Substance in the Seventh Degree against the Plaintiff.

132.    On or about June 24, 2010, Defendant Hickey instructed Defendant Flunory that once Departmental Charges were initiated against the Plaintiff, they would place the Plaintiff of on modified duty which included, removing the Plaintiff's weapon and which would also preclude the Plaintiff from being promoted to the rank of Lieutenant.

133.    During the same time period that the Defendants initiated charges and was conducting an ongoing investigation of the Plaintiff's for Criminal Possession of a Controlled Substance to wit: anabolic steroids, the Plaintiff was assigned to Dignitary Protection Duty. In that capacity, the Plaintiff acting with FBI, Secret Service and other law enforcement officials, was tasked with the sensitive duty of providing security for Heads of State and High Level Government Officials.

134.    In that capacity on or about January 12, 2010, Plaintiff, along with other law enforcement personnel, provided Dignitary Protection for the First Lady of the United States of America—Mrs. Michelle Obama while she was in New York. In that capacity, the Plaintiff had detail information of the goings and comings of the First Lady and had actual contact with the

40

First Lady of the United States where she personally thank the Plaintiff with a handshake for assisting in providing security for her.

135.    In that capacity, on or about September 21, 2010, Plaintiff actually appeared at JFK Airport on the runway in a police vehicle to assist, escort and provide security for the President/Prime Minister of Trinidad and Tobago. In that capacity on or about September 23, 2010, Plaintiff actually appeared at JFK Airport on the runway in a police vehicle to assist, escort and provide security for the President of Dominico.

136.    In that same capacity, throughout the year of 2010, Plaintiff served on a number of Dignitary Security Details, including during the United Nations General Counsel Meetings and all these duties were assigned to the Plaintiff by the Defendants, the City of New York and New York City Police Department while Plaintiff was facing charges or being investigated on charges of possession and actual consumption of a controlled substance to wit: anabolic steroids. During the same time period that the Defendants initiated charges against the Plaintiff for Criminal Possession of a Controlled Substance to wit: anabolic steroids, the Plaintiff was assigned to Dignitary Protection Duty. In that capacity, the Plaintiff acting with FBI, Secret Service and other law enforcement officials, was tasked with the sensitive duty of providing security for Heads of State and High Level Government Officials.

137.    In that capacity on or about January 12, 2010, Plaintiff, along with other law enforcement personnel, provided Dignitary Protection for the First Lady of the United States of America—Mrs. Michelle Obama while she was in New York. In that capacity, the Plaintiff had detail information of the goings and comings of the First Lady and had actual contact with the First Lady of the United States where she personally thank the Plaintiff with a handshake for assisting in providing security for her. In that capacity, on or about September 21, 2010, Plaintiff

actually appeared at JFK Airport on the runway in a police vehicle to assist, escort and provide security for the President/Prime Minister of Trinidad and Tobago.

138.    In that capacity on or about September 23, 2010, Plaintiff actually appeared at JFK Airport on the runway in a police vehicle to assist, escort and provide security for the President of Dominico. In that same capacity, throughout the year of 2010, Plaintiff served on a number of Dignitary Security Details, including during the United Nations General Counsel Meetings and all these duties were assigned to the Plaintiff by the Defendants, the City of New York and New York City Police Department while Plaintiff was facing charges or being investigated on charges of possession and actual consumption of a controlled substance to wit: anabolic steroids.

139.    That Defendant the City of New York, New York City Police Department, Hyland, Flunory, Hickey, Corrado and De-Ceglie, Bland and Swartz knew and had reasons to know that the allegations against the Plaintiff was without merit and motivated by unlawful discriminatory practices based upon Plaintiff's race, national origin, service in the military and retaliation as same Defendants took absolutely no action in light of their investigation and findings at the time to remove the Plaintiff at that time from the significant and highly responsible duty of Dignitary Protection Duty.

140.    On June 25, 2010, the Plaintiff contacted Defendant Flunory based upon Defendant Flunory's representation to the Plaintiff during their September 30, 2009, meeting in which Defendant Flunory assured the Plaintiff that their investigation would not prevent the Plaintiff from being promoted to inquiry of Defendant Flunory why the Plaintiff was passed over for promotion. In response according to Defendant Flunory, same Defendant informed the Plaintiff that the investigation against the Plaintiff was still active and that he, Defendant

42

Flunory, did not receive any telephone calls relative to Plaintiff's promotion---meaning that same Defendant did not have anything to do with the fact that the Plaintiff was not promoted.    On July 30, 2010, Defendant Flunory and Bland specifically discussed the issue of the statute of limitation as to the Plaintiff's case and during same discussion, Defendant Bland stated to Defendnat Flunory that "…there is no statute of limitations in this case" because the Defendants acting in concert each with the other and with deliberate intention to violate Plaintiff's State and Constitutional Rights specifically charged the Plaintiff with alleged violation of Penal Law section 220.03, Criminal Possession of a Controlled Substance to wit: possession of anabolic steroid to deny the Plaintiff the lawful and application statute of limitation that he was entitled to. All the other Defendants had knowledge of the foregoing conversation and agreement; specifically, Defendants De Ceglie, Hyland and Corrado signed off on and approved the foregoing.

141.    Again, on August 30, 2010, Defendant Flunory and Bland specifically discussed the issue of the statute of limitation as to the Plaintiff's case and Defendant Bland "reiterated that the Charges and Specifications are pending and there is no statute of other and with deliberate intention to violate Plaintiff's State and Constitutional Rights limitations in this case, because the Defendants acting in concert each with the specifically charged the Plaintiff with alleged violation of Penal Law section 220.03, Criminal Possession of a Controlled Substance to wit: possession of anabolic steroid to deny the Plaintiff the lawful and application statute of limitation that he was entitled to because the Defendants acting in concert each with the other specifically charged the Plaintiff with alleged violation of Penal Law section 220.03, Criminal Possession of a Controlled Substance to wit: possession of anabolic steroid.    All the other Defendants had

knowledge of the foregoing conversation and agreement; specifically, Defendants De Ceglie, Hyland and Corrado signed off on and approved the foregoing.

142. On August 11, 2010, Defendant De Cegle conducted a case review of the investigation relative to the Plaintiff and after same review he directed Defendant to confer with Defendant Bland and Swartz in furtherance of the collective efforts to obtain charges and specifications against the Plaintiff.

143. On August 20, 2010, in furtherance of their conspiracy to deny Plaintiff his constitutional rights, Defendant Flunory conferred with Defendant De Ceglie and informed same defendant that the Charges/Specification against the Plaintiff will be ready soon and once they are ready he will be prepared to modify the Plaintiff. All the other Defendants had knowledge of the foregoing conversation and agreement.

144. On or about September 10, 2010, Defendant Corrado, who was not in Plaintiff's chain of command at the time of the filing of the charges, signed off and filed Specifications against the Plaintiff, alleging that the Plaintiff "...On or about and between January of 2007 and May of 2007, did knowingly and unlawfully possess a controlled substance, to wit: Said sergeant did possess and/or ingests anabolic steroids and/or human growth hormones for purposes outside the normal course of standard medical care. P.L. 220.03" On September 10, 2010, Defendant Flunory obtained the charges and specifications from Defendant Bland and Swartz and on September 28, 2010, Defendant Flunory along with Lieutenant Ramos appeared at One Police Plaza. At approximately 10 am on the foregoing date, in front of One Police Plaza, Defendant Flunory, acting in concert with the other Defendants and with malicious intent to embarrass, humiliate, insult and to cause the Plaintiff emotional distress, purposely selected to inform Plaintiff at the front main entrance area of Headquarters, New York City Police

Department, that the Plaintiff was being modified for the good of the police department and further demanded that Plaintiff immediately surrender the Plaintiff's Department issue firearm, Police Shield and Police Identification Card. Defendant Flunory further directed Plaintiff to report to Defendants Bland and Swartz where Defendants Bland and Swartz served the Plaintiff with the Charges and Specifications of Criminal Possession of a Controlled Substance to wit: anabolic steroids. All of the Defendants had knowledge of the foregoing conversation and agreement; specifically, Defendants De Ceglie, Hyland and Corrado signed off on and approved the foregoing.

145.    After being served with the within Specifications, Plaintiff complained to his chain of Command, to the Defendant the City of New York and New York City Police Department, to the Department Advocate's Office, to the lawyer assigned to the Plaintiff by the New York City Police Department that the charges filed against him by the City of New York and New York City's Police Department refusal to promote the Plaintiff to Lieutenant, the over two year investigation against the Plaintiff, the effort by the Defendants to intentionally circumvent the statute of limitation is based upon the fact that the Plaintiff is a Hispanic Male, who originated from Puerto Rico, who was served in the United States armed forces and in retaliation against the Plaintiff's complaint to and against the Defendants of hostile work environment.

146.    Plaintiff further informed his chain of Command, Defendant the City of New York and New York City Police Department, Department Advocate's Office to the lawyer assigned to the Plaintiff by the New York City Police Department that Defendant Corrado, acting in concert with the other Defendants, is the mastermind behind the acts to unlawfully discriminate and retaliate against the Plaintiff since from 2006 and continuing the date the

specification was filed against the Plaintiff and to present, Defendant Corrado has made it clear that the Plaintiff is "scamming" the Department; that the Plaintiff is too "ambitious" and that the "Plaintiff's kind" will never run the police the effort by the Defendants to intentionally circumvent the statute of limitation is based upon the fact that the Plaintiff is a Hispanic Male, who originated from Puerto Rico, who was served in the United States armed forces and in retaliation against the Plaintiff's complaint to and against the Defendants of hostile work environment.

147. That even though the Plaintiff and Defendant Corrado stopped serving in the same command from on or about 2007-2008, Defendant Corrado, maintained and harbored the same discriminatory feelings against the Plaintiff and used the allegations against the Plaintiff of alleged steroids possession to achieve his discriminatory intent of unlawfully discrimination against the Plaintiff based upon the fact that Plaintiff is a Hispanic Male Hispanic, who originated from Puerto Rico, who is serving in the United States armed forces and in retaliation for Plaintiffs Complaint of hostile work environment and discrimination against the Plaintiff.

148. Based upon unlawful discriminatory practice and in furtherance of his intent to unlawfully discriminate against the Plaintiff based upon Plaintiff's race, national origin and military service, intentionally and deliberately ignoring the evidence that readily and convincing established that the Plaintiff did not knowingly use and/or attempt to use any controlled substance, and not anabolic steroids in particular, Defendants, Hyland, De- Ceglie, Flunory and Corrado, in their individual capacities and acting within the scope of their employment on behalf of the City of New York and on behalf of New York City Police Department, found that the allegations against Plaintiff, to wit:"…knowingly and unlawfully possess a controlled substance, to wit: said Sergeant did possess and/or ingest anabolic steroids and/or human growth hormones

for purposes outside the normal course of standard medical care" were SUBSTANTIATED. At no point during their investigation to present did the City of New York and/or New York City Police Department, Defendants Bland, Swartz, Hyland, De-Ceglie, Flunory and Corrado, ever perform any chemical test on any substance that was allegedly in the Plaintiff's possession to determine if same was a controlled substance. At no point during the investigation to present did the City of New York and New York City Police Department, Defendants Bland, Swartz, Hyland, De-Ceglie, Flunory and Corrado ever recover any controlled substance from the Plaintiff.

149. On October 5, 2010, Defendant De Ceglie conducted a case review of the investigation relative to the Plaintiff and after same review, even though no controlled substance was recovered from the Plaintiff and no controlled substance was tested the Defendants and the Informant stated that he did not personal mail any controlled substance to the Plaintiff, same Defendant found that the allegations against the Plaintiff to be SUBSTANTIATED.

150. On October 28, 2010, Defendant Flunory consulted with Defendants Bland and Swartz relative to the prosecution of the Plaintiff. During same consultation Defendant Bland directed Defendant Flunory to find out if the Informant was still incarcerated and Defendant Flunory determined that the Informant was still incarcerated at USP Canaan USP Penitentiary, in Waymart, Pennsylvania and was slated to be released in on May 23, 2011. All the other Defendants knew of and signed off on the foregoing.

151. On January 7, 2011, Defendant Flunory consulted with Assistant United States Attorney, Timothy Coughlin regarding the Informant's obligation to testify at the Plaintiff's Departmental Hearing and was specifically informed that the Informant was not under any obligation pursuant to the cooperation agreement to testify or cooperate with any law

47

enforcement, including the Defendants, once the Informant was released from prison. On same date, Defendant Flunory specifically contacted Defendant Bland and informed same Defendant of the foregoing. All of the other Defendants knew of the foregoing at that time and even before.

152.    On January 22, 2011, Defendant Flunory, based upon direction from Defendant Bland, to secure the testimony of the Informant at the Plaintiff's Departmental Hearing, travelled with Defendant De Ceglie and Sergeant Staudinger to the Federal Penitentiary in Pennsylvania, for the purpose of seeking the cooperation of the Informant testimony at the Departmental Hearing of the Plaintiff. Realizing that the Informant was not under any cooperation agreemtn obligation to testify against the Plaintiff at the Departmental Hearing, the Defendants, acting in concert one with the other, was willing to pursue avenues to seek to reduce the Informant's period of incarceration in exchange for the Informant's testimony at the Departmental Hearing of the Plaintiff. The Defendants were not allowed on that date to meet with the Informant.

153.    Even though the Plaintiff has successfully passed the New York City Police Department Lieutenant examination, Defendant, The City of New York and New York City Police Department have intentionally neglected and/or refused to promote Plaintiff to the rank of Lieutenant from the date he successfully passed the New York City Police Department Lieutenant's examination to present, despite the Plaintiff's repeated request and the fact that Plaintiff is lawfully entitled to such promotion. That the City of New York and New York City's Police Department refusal to promote the Plaintiff to Lieutenant is based upon the fact that Plaintiff is a Hispanic Male, who originated from Puerto Rico, who was served in the United States armed forces and in retaliation for Plaintiffs Complaint of hostile work environment.

154.    Even though the undisputed evidence demonstrated beyond any reasonable doubt clearly, convincingly and conclusively that the Plaintiff had not, did not and was not using any

controlled substance including anabolic steroids, the City of New York, New York Police Department, Defendants Flunory, Corrado in their individual and official capacity and as agent, servant, representative of the City of New York and New York City Police Department, acting in concert with Defendants Hyland, De-Ceglie, Bland and Swartz in their individual capacities and acting within the scope of their respective employment on behalf of the City of New York and on behalf of New York City Police Department, on or about September 10, 2010 submitted a correspondence/Charges and Specification to the Police Commissioner charging the Plaintiff with violation of Department Regulations in which it is alleged that "... Sergeant Hector Rodriguez,...on or about and between January 2007 and May of 2007, did knowingly and unlawfully possess a controlled substance, to wit: said Sergeant did possess and/or ingest anabolic steroids and/or growth hormones for purposes outside the normal course of standard medical care."

155.    In addition to the foregoing charges, on or about September of 2010 and continuing to present date and time, the City of New York and the New York City Police Department modified Plaintiff thereby stripping him of his assigned weapon and positions of authority.

156.    As such, based upon the City of New York and New York Police Department's rules, procedures, policies and regulations, the City of New York and New York City Police Department had to serve Plaintiff with charges/specifications on or before January 22, 2010 and, as stated above, the City of New York and New York City Police Department did not serve the Plaintiff with charges/specifications until after September 10, 2010.

157.    In addition, after the charges/specifications were initiated on or about September of 2010, the City of New York and New York City Police Department, based upon the City of

49

New York and New York Police Department's rules, procedures, policies and regulations, had to commence Departmental Trial proceedings against Plaintiff within eighteen months of the serving of the charges/specifications.

158.    The City of New York and the New York City Police Department did not commence Department trial proceedings against Plaintiff until some two and a half (2 ½ ) years after serving Plaintiff with the charges/specifications.

159.    From the inception of the investigation and/or within a short period of time subsequent to the commencement of the investigation against the Plaintiff, Attorney Lisa Bland was the assigned lawyer and Defendant Swartz served in a supervisory capacity on behalf of the City of New York, the New York City Police Department and the New York City Police Department Advocate's Office.

160.    As assigned attorney and supervising attorneys acting within the scope of their duties and responsibility, Defendants Bland and Swartz was in frequent and constant verbal and written communication with Defendant Flunory.

161.    As the assigned and supervisory attorneys and acting within the scope of their duties and responsibility, it is believed that Defendants Bland and Swartz directed and/or discussed avenues and/or areas of investigation with Defendant Flunory should consider investigating and it is believed that Defendant Flunory did conduct areas of investigation based upon attorney Defendants Bland and Swartz's direction.

162.    That based upon the evidence, their educational background, their professional training as an attorney and based upon their thorough and intimate review and knowledge of the case file against the Plaintiff and their knowledge as to the investigation, Defendants Bland and Swartz, Flunory, Hickey, Hyland, De-Celig and Corrado knew and/or had reasons to know that

the evidence did <u>not</u> support a finding "...knowingly and unlawfully possess a controlled substance, to wit: said sergeant did possess[ed] and/or ingest anabolic steroids and/or growth hormones for purposes outside the normal course of standard medical care."

163.    That for more than two years, Defendants Bland and Swartz acting in concert with the other defendants continued to prosecute the Plaintiff on specifications that Plaintiff "...knowingly and unlawfully possess a controlled substance, to wit: said sergeant did possess and/or ingest anabolic steroids and/or growth hormones for purposes outside the normal course of standard medical care.", even though Defendant Lisa Bland knew and/or had reasons to know that the credible evidence could not and would not support such a finding in criminal court and/or in the City of New York and the New York City Police Department Administrative Proceedings.

164.    That Defendants knew and had reasons to know long before the Departmental Hearing commenced that the Informant would not appear and testify on behalf of the Defendants against the Plaintiff and yet the Defendants moved forward in  a malicious and unlawful manner and in the wrongful exercise of the power entrusted to them, to continue to prosecute the Plaintiff when they knew and had reasons to know that they did not have enough evidence to support the allegations that brought against the Plaintiff.

165.    That the Defendants realizing that they would not be able to sustain the allegations that they brought against the Plaintiff long before the Departmental Hearings commenced decided to seek to have and speak with Klaus Pritschet for the very first time on or January 17, 2012 even though same Defendants knew of and had contact information for Klaus Pritschet from on or about On or about September 19, 2008, when they travelled to the Informant's house at 1784 Mountain Road Ottisville, New York and conducted an interview of

the Informant and the during same the Informant indicated that he never met the Plaintiff personally and was only introduced to the Plaintiff by a former New York City Police and that Klaus Pritschet was the one who mailed the steroids and/or human growth hormones to the Plaintiff. The Informant further informed the Defendants of the foregoing again on or about February 5, 2009, and the Defendants had the address, date of birth, telephone number and full name of Klaus Pritschet from their very first meeting with the Informant and possibly earlier.

166.    On January 17, 2012, Defendant Flunory had a meeting with Defendant Bland, before the Departmental Trial commenced, Defendant Bland directed Defendant Flunory to interview Mr. Pritchet so that Mr. Pritchet could "..corroborate the information from Israel Sanchez's [Informant] interviews that Mr. Pritchet sen the subject officer Hector Rodriguez [Plaintiff} steroids." Defendants De-Ceglie, Hickey and Corrado knew of the foregoing.

167.    On January 17, 2012, Defendant Flunory conducted extensive efforts to locate and contact Klaus Pritchet including making repeated telephone calls to Mr. Pritchet, contacting numerous police departments relative to Mr. Pritchet.

168.    On January 18, 2012, Defendant Flunory and Defendant Bland conferred again relative to making efforts to locate, find and interview Mr. Pritchet for the sole purpose of corroborating the information that the Informant gave them that it was Mr. Pritchet, and not the informant, who allegedly mailed controlled substance to wit: anabolic steroids and/or human growth hormones to the Plaintiff's address. During same interview, Defendant Bland reiterate to Defendant Flunory that the case against the Plaintiff remains "...a **TERMINATION CASE.**"— meaning that the Defendants were seeking to fire the Plaintiff from the New York City Police Department. Consistent with the directives that Defendant Flunory received from Defendant Bland, same Defendant made numerous attempts to locate and speak with Mr. Pritchet including

calling Daisy Pritschet, someone the Defendants believe had relevant information as to the whereabouts of Mr. Pritschet. Defendants also conducted public record checks to locate Mr. Pritchet.

169.    On January 19, Defendant Flunory mailed a number of certified letters to South Carolina and Chicago to addresses the Defendants believed to be addresses of Klaus Pritschet.

170.    On January 25, 2012, Defendant Flunory was informed that Mr. Pritschet had called same Defendant and upon returning Mr. Pritchet's telephone, was informed by Mr. Pritschet that:

> 1.    Mr. Pritchet informed Defendant Flunory in that conversation "numerous times that he did not mail any steroids or H.G.H. to New York or Washingtonville.
>
> 2.    "That he does not recall selling to Hispanics, he only recalls dealing with Europeans and a black male, basketball player playing division III basketball from North Carolina."
>
> 3.    Mr. Pritchet told Defendant Flunory that he did not sell any steroids to any police officers and was told specifically never to deal with police officers relative to steroids and/or human growth hormones.
>
> 4.    Mr. Pritchet was also very adamant during same conversation that he did not know the Informant Israel Sanchez and he did not know the Plaintiff.

171.    On January 25, 2012, Defendant Flunory conferred with Defendant Bland and informed Defendant Bland of the foregoing conversation and specifically informed Defendant Bland that Mr. Pritschet had denied knowing Israel Sanchez, the Informant and denied sending human growth hormones or steroids to any one in New York or Washingtonville area.

172.    As of January 25, 2012, and even sooner, all the Defendants knew that the Informant was not going to appear at the Departmental Hearing to testify against the Plaintiff; that Mr. Pritschet, the person the informant claimed mail the controlled substance to the Plaintiff's address, not only denied doing so, but further denied even knowing the Informant. As such, the Defendants knew based upon their legal training, expertise, the evidence and their investigation of several years that they should not and could not prosecute a meritorious claim against the Plaintiff for Criminal Possession of a Controlled Substance or the Attempted Criminal Possession of same.

173.    That realizing that the credible evidence could not and would not support such a finding in criminal court and/or in the New York City and the New York City Police Department Administrative Proceedings, that Plaintiff "...knowingly and unlawfully possess a controlled substance, to wit: said sergeant did possess[ed] and/or ingest anabolic steroids and/or growth hormones for purposes outside the normal course of standard medical care.", on or about March 21, 2012, on the eve of the actual commencing date of Plaintiff's Departmental Hearing, Defendant Lisa Bland under the supervision of Defendant Swartz and acting in concert with the other Defendants amended the Specifications against Plaintiff to Attempted Criminal Possession of a Controlled Substance, Penal Law Section 110/220.03.

174.    That even though Defendants amended the charges against the Plaintiff to the Attempted Possession of a Controlled Substance, based upon the Defendants' training and experience, same Defendants all knew they did not and could not sustain the amended charges against the Plaintiff.

175.    That as a result of the Defendants' unlawful, hostile, discriminatory and disparate conduct/acts, the Plaintiff had to appear in Departmental Hearings on March 21, 2012, April 3,

54