2012, June 14, 2012, August 8, 2012, November 27, 2012, December 18, 2012, January 14, 2013, January 29, 2013, February 22, and 26, 2013, and April 16, 2013 where the Defendants sought and are presently still seeking the termination of the Plaintiff's employment based upon pretextual allegations of Attempted Criminal Possession of a Controlled Substance.    That the repeated and ongoing act of compelling the Plaintiff to appear at Departmental Hearings on the foregoing dates and continuing is as a result of the unlawful conduct on all Defendants, including Defendantsthe City of New York, New York City Police Department, Swartz, Bland, Flunory, Hickey, De-Celig, Hyland and Corrado in their individually capacities and in their official capacities as agents of the Defendants the City of New York and New York City Police Department.    That the Defendants the City of New York and the New York City Police Department, acting in concert with the other named defendants, their agents, servants and/or employees, are seeking the termination of Plaintiff's employment as a New York City Police Officer based upon the wrongful/malicious prosecution of the Plaintiff, based upon the Plaintiff's race, national origin, military service and in retaliation against the Plaintiff for complaining about the discriminatory and hostile work environment of the Defendants.    That on or about April 16, 2013, at the Departmental Hearing, Plaintiff testified on his own behalf and, again notified the Defendants that the he did not possess or attempt to possess any controlled substance and further notified the Defendants of the remarks of Defendant Corrado to the Plaintiff when they worked together, notified the Defendants that he had previously notified and complained to his chain of command of the acts, comments and conduct of Defendant Corrado towards the Plaintiff.

176.    That the Defendants desire to terminate the employment of the Plaintiff is unlawfully based upon the fact that the Petitioner is a Hispanic male, from Puerto Rico and has

served in the Armed Forces of the United States of American and in retaliation to the Petitioner's

continuous to date and repeated complaints of race discrimination by the Defendants and in

retaliation to the Plaintiff's continuous to date complaints of hostile work environment.

177.    That the true basis why the Defendants are seeking the termination of the Plaintiff

is based upon the fact that the Petitioner is a Hispanic male, from Puerto Rico and has served in

the Armed Forces of the United States of America and in retaliation to the Plaintiff's continuous

to date and repeated complaints of race discrimination by the Defendants and in retaliation to the

Plaintiff's repeated and continuous to date complaints of hostile work environment.

178.    That based upon information and belief, a number of Police Officers from the

City of New York and New York City Police Department of different race, color, ethnicity,

national origin, and who are not members of the armed forces called to active duty, who were

charged with, found guilty of and actually admitted to knowingly and unlawfully possessing a

controlled substance, to wit: anabolic steroids and/or growth hormones for purposes outside the

normal course of standard medical care, were not investigation, prosecuted and/or punished in

the same fashion as Plaintiff herein and/or terminated from their employment as Defendants the

City of the New York and New York City Police Department is seeking to do to the Plaintiff.

179.    That Defendants unlawfully subjected Plaintiff to unlawful disparate treatment as

other New York City Police Officers of different race, color, ethnicity, national origin than

Plaintiff, and, who are not members of the armed forces called to active duty for thirty

continuous days under similar facts and circumstances as that of Plaintiff, are treated differently

and/or more favorably than Plaintiff after being accused and/or after being found guilty for

[a]ctual possession and/or use of anabolic steroids for non-medical purpose--to wit:    they

received better dispositions/punishment; were not fired from the Police Department; were

restored to duty; received reasonable and/or favorable treatment than did the Plaintiff, were not publicly humiliated as was the Plaintiff; were never investigated to the level and extent to which these Defendants investigated Plaintiff, and/or did not have their rights and/or privacy invaded as was suffered by the Plaintiff herein. For example based upon information and belief:

1.     Police Officer Eric Carriacto in 2011 was found guilty of actual possession/or use of anabolic steroid was sentenced to dismissal probation for a period of one year, forfeiture of sixty vacation days and steroid testing.

2.     Police Office Joshua Hammer in 2011 was found guilty of actual possession and/or use of anabolic steroids and for failure to notify his commanding officer of a change of residence and was sentenced to suspension from the New York City Police Department for a period of Thirty (30) days.

3.     Police Officer Michael Marino in 2011 was found guilty of actual possession and/or use of anabolic steroids and/or human growth hormone and was sentenced to dismissal probation for a period of one year and forfeiture of Thirty (30) vacation days.

4.     Lieutenant Michael Sanicola in 2008 was found guilty of actual possession and/or use of anabolic steroids and was placed on dismissal probation for a period not to exceed one year, two additional drug screening and forfeiture of Thirty (30) vacation days.

5.     Police Officer Tab Haynes in 2008 was found guilty of actual possession and/or use of anabolic steroids was sentenced to dismissal probation for a period not to exceed one year and suspended for a period of Thirty (30) days.

6.     Police Officer James Prinzo in 2008 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and suspended for a period of Thirty (30) days.

7.     Police Officer Frank Perna in 2008 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and forfeiture of Thirty (30) days suspension.

8.     Sergeant Anthony Basile in 2008 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and forfeiture of Thirty (30) vacation days.

9.     Police Officer Charles Kazak in 2009 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to dismissal probation for a not to exceed one year and forfeiture of Thirty (30) vacation days and subject to two additional drug screening tests during the probation period.

10.    Police Officer Matthew Mahoney in 2008 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and forfeiture of Thirty (30) vacation days and two additional drug screening during the probationary period.

11.    Police Officer Daniel Zehrer in 2010 was found guilty and/or pled guilty to actual possession and/or use of anabolic steroids and was sentenced to dismissal

57

probation for a period not to exceed one year, forfeiture of Fifteen (15) and suspension for Thirty One (31) days.

12.     Police Officer Paul Gebbia in 2010 was found guilty of ingesting an anabolic steroid or a dietary supplement and was sentenced to a period of suspension from the Police Department for a period of Three Hundred and Fifty Days—less than one year.

13.     Police Officer Sunil Rogoobeer in 2009 was found guilty of actual possession and/or use of anabolic steroids and was sentenced to a period of suspension from the New York City Police Department for a period not to exceed One Hundred and Three Days.

14.     Detective Chris Burns in 2009 was found guilty of actual possession and/or use of anabolic steroids which resulted in a positive test for the anabolic steroid, possessed a duplicate New York City Police Department Shield and Failure to safeguard his service and off duty firearms and was sentenced to One Hundred and Ninety-Five days suspension from the New York City Police Department.

15.     Police Officer Thomas Lee in 2009 pled guilty to two separate counts— one for ingesting anabolic steroids and the actual possession of anabolic steroids. He was sentenced to dismissal probation for a period not to exceed one year, additional drug screening during the probation period and suspension of Sixty (60) days.

16.     Police Officer Michael Cospito was found guilty in 2009 of 1) operating a vehicle while under the influence of an intoxicant, 2) operating a motor vehicle while his ability was impaired by an intoxicant, 3) refused to submit to a blood alcohol test, 4) unfit for duty and 5) operating a motor vehicle while under the influence and failed to stop at a red light. He was sentenced to dismissal probation for a period not to exceed one year, suspension for Thirty (30) days.

17.     Sergeant Scott Barcia in 2008 was found guilty of possession and used of anabolic steroids and was sentenced to dismissal probation for a period of one year, forfeiture of Thirty (30) vacation days and two additional drug screening during the period of probation.

18.     Lieutenant Pasquale Capuano in 2008 actually admitted to ingestion of anabolic steroids and was sentenced to forfeiture of Thirty (30) vacation days.

19.     Police Officer Vaughn Ettienne in 2008 was found guilty of possession and/use of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and two additional drug screening during the probationary period, Thirty (30) days  suspension and forfeiture of Fifteen (15) vacation days.

20.     Sergeant Anthony Basile in 2008 was found guilty of possession and ingestion of anabolic steroids and was placed on dismissal probation for a period not to exceed one year and forfeiture of Thirty (30) vacation days.

21.     Sergeant Raymond Cotton in 2008 was found guilty of possession and ingestion of anabolic steroids and was placed on dismissal probation for a period not to exceed one year and suspended for a period of Thirty (30) days.

22.     Police Officer Charles Kazak in 2008 was found guilty of possession and ingestion of anabolic steroids in 2009 was found guilty of actual possession and ingestion of anabolic steroids and was sentenced to dismissal probation for a period not to exceed One year, two additional drug screening tests and forfeiture of Thirty (30) vacation days.

58

23.     Police Officer Matthew Mahoney in 2008 was found guilty of actual possession and ingestion of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year, two additional drug screening tests and forfeiture of (30) vacation days.

24.     Police Officer Darryl Carr in 2010 was found guilty of 1) wrongfully slapping a person known to the Police Department, 2) wrongfully reported misleading information, 3) wrongfully impeding an official department investigation and 4) making annoying telephone calls to a person known to the police Department. He was allowed to immediately file an application for a vested interest retirement pension form the New York City Police Department, placed on dismissal probation and was allowed to remain on suspension with pay duty status until separation from the police department.

25.     Nikolaos Kontarinis in 2008 was found guilty of ingesting an anabolic steroid and was sentenced to forfeiture of Thirty Two (32) vacation days and Two Hundred and Nineteen (219) days suspension.

26.     Lieutenant Michael Sanicola in 2008 was found guilty of possession and ingestion of anabolic steroids and was sentenced to dismissal probation for a period not to exceed on year, subject to two additional drug screening test during the probationary period and forfeiture of Thirty (30) vacation days.

27.     Police Officer Tab Haynes in 2008 was found guilty of possession and ingestion of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and Thirty (30) days suspension.

27.     Police Officer James Prinzo in 2008 was found guilty of actual possession an ingestion of anabolic steroids and was sentenced to dismissal probation for a period not to exceed one year and Thirty (30) days suspension.

180.    That the Plaintiff complained to his chain of command from the inception of the discriminatory and unlawful acts against the Plaintiff continuously even to date to the City of New York and New York City Police Department as to repeated acts of discrimination that the Plaintiff has been subjected to in the course of his service/employment as a New York City Police Officer and relative to the within investigation including the complaints about the investigation, invasion of privacy, the level and extent of the investigation and the prosecution where Defendants are seeking the termination of the Plaintiff based upon the fact that the Petitioner is a Hispanic male, from Puerto Rico and has served in the Armed Forces of the United States of American and in retaliation to the Plaintiff's continuous to date and repeated complaints of race discrimination by the Defendants and in retaliation to the Plaintiff's repeated and continuous to date complaints of hostile work environment.

181.    That all of the acts, conduct of the Defendants are ongoing and continuous from the initial date complained of herein to the date of the within complaint and it is anticipated that same conduct will continue in the future as of the date of the within complaint the Plaintiff is still on modified duty, is still stripped of his weapon, is still not promoted to Lieutenant, is still in the United States Armed Forces and is still awaiting a Decision from the Commissioner of the New York City Police Department.

182.    That all of the unlawful acts/conduct complained of herein by the Plaintiff is based upon the fact that the Plaintiff is a male Hispanic from Puerto Rico, who is serving in the United States Armed Forces and based upon the fact that the Plaintiff complained to the Defendants about racial discrimination, discrimination based upon his military affiliation and the hostile work environment.

183.    That it is the custom and practice of the Defendants to engage in the unlawful acts complained of herein by the Plaintiff to discriminate against Plaintiff, and other police officers similarly situated as Plaintiff, based on the fact that Plaintiff and the other officers similarly situated as Plaintiff are male Hispanic of Puerto Rican National Origin, and are serving in the United States Military Reserves.

184.    As a condition precedent to filing the within complaint the Federal Equal Employment Opportunity Commission, the Petitioner is obligated to file an internal complaint with the New York City and New York City Police Department Office of Equal Employment Opportunity (OEEO) Office.

185.    On or about December 5, 2012, Plaintiff complied with the foregoing obligation and filed the within complaint with the New York City and New York City Police Department Office of Equal Employment Opportunity (OEEO) Office.

186.    That subsequent to the foregoing, the Plaintiff received correspondence form the Defendant OEEO Office indicating that they would not take any action based upon the allegations submitted to them by the Plaintiff.

187.    On or about December 6, 2012, immediately after the Plaintiff filed the within complaint with the Defendants, New York City and New York City Police Department Office of Equal Employment Opportunity, the Defendants continued their course of harassing and retaliating against the Plaintiff by forcing/compelling the Plaintiff to submit to yet another drug test.    It is believed that the only reason the Defendants compelled the Plaintiff to submit to yet another drug test was to intimidate, harass, alarm, retaliate against the Plaintiff as Plaintiff had file a complaint against the Defendants alleging discrimination based upon his race, color, national origin, military service/affiliation, harassment and retaliation.

188.    That on or about January 29, 2013, Plaintiff timely filed a complaint charging discrimination and other related charges against the Defendants with the United States Equal Employment Opportunity Commission ("EEOC") and, on or about March 22, 2013, Plaintiff received a right to sue letter from the EEOC.

189.    That, based upon information and belief, in 1999, a Federal lawsuit was commenced by Twenty-Two individuals and the New York City Police Department Latino Officers' Association alleging discriminatory and disparate application of the New York City Police Department's disciplinary rules, procedures and punishments of Latinos, Afro-Americans and other minority police officers by Defendants the City of New York and the New York City Police Department.

190.    Based upon information and belief, the Honorable Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York certified the foregoing lawsuit

as a class action which included all African-American and Hispanic Police Officers and certain civilian employees of the New York City Police Department from 1995 forward.

191.    Based upon information and belief, that lawsuit alleged that blacks and Latino Officers were less likely to be acquitted and have their charges dismissed than whites at Departmental Hearings.

192.    Based upon information and belief, that lawsuit alleged that Afro-Americans were Sixty (60) percent more likely and Hispanics were Thirty (30) percent more likely to be found guilty at Departmental trial than whites.

193.    Based upon information and belief, that lawsuit alleged that in terms of overall dispositions, charges against whites were more often dismissed, or resulted in findings of not guilty, while Afro-Americans and Latinos were far more often found guilty.

194.    Based upon information and belief, that lawsuit further alleged that when findings of guilt were handed down, Afro-Americans and Hispanics were terminated from the police force with greater frequency that white officers, who received less penalties/punishment.

195.    Based upon information and belief, the Defendant the City of New York and New York City Police Department settled the foregoing lawsuit with the Plaintiffs of that lawsuit in which, the Defendant provided a monetary award to the Plaintiffs of that lawsuit and members of the class and more significantly, Defendant agreed to an injunctive relief that the Defendant, the City of New York and New York City Police Department would be enjoined from discriminating based upon race, color, national origin, or ethnicity in the future.

196.    Based upon information and belief, pursuant to the settlement of that class action lawsuit, Defendant the City of New York and New York City Police Department, was obligated to establish a review unit to analyze the New York City Police Department's disciplinary process

regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being investigated, charged or penalized in a discriminatory manner.

197.    Based upon information and belief, the settlement agreement contained specific steps that the City of New York and New York City Police Department would take to establish procedures to prevent discrimination.

198.    This Plaintiff and other Afro-Americans and Latino/Hispanic Officers, similarly situated as this Plaintiff, are members of the Class and settlement agreement/stipulation was designed to protect.

199.    Plaintiff is a Latino/Hispanic Officer and, as such, is a member of that class that the foregoing lawsuit and settlement agreement was intended to futuristically protect and as such, Plaintiff has standing to seek to have a Court compel the Defendants to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being disciplined, investigated, charged, prosecuted and/or penalized in a discriminatory manner and to comply with the settlement agreement's specific steps that the City of New York and New York City Police Department should have undertaken to establish procedures to prevent discrimination.

200.    Based upon information and belief, the Defendants the City of New York and New York City Police Department did not establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and/or Latino/Hispanic and/or minority members of the Police Department are being disciplined, investigated, charged, prosecuted and/or penalized in a discriminatory manner

as outlined in the stipulation of settlement of the class action lawsuit. Assuming that same Defendants attempted to establish said review unit, their efforts fell short of the terms and conditions outlined in same stipulation and this Plaintiff, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

201.    Based upon information and belief, the Defendants the City of New York and New York City Police Department did not establish specific steps that the City of New York and New York City Police Department would take to establish procedures to prevent discrimination and assuming that same Defendants attempted to, their efforts fell short of the terms and conditions outlined in same stipulation and this Plaintiff, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

202.    That had the Defendants complied with the aforementioned stipulation of settlement and its terms and conditions, had the Defendants established a review unit, had the Defendants properly and/or adequately established a review unit and/or had the review unit, if so established, was performing its duties as per the stipulation of settlement to try and prevent the unlawful discrimination and disparate treatment of Latino, African American and/or other minority police officers, than the review unit and the Defendants would have and should have detected, stopped, prevented and/or remedied the unlawful discrimination, retaliation, hostile work environment and disparate treatment by Defendants against Plaintiff herein; particularly in reference to the unlawful disparate treatment by Defendants against Plaintiff related to their charges, investigation, prosecution, invasion of privacy and penalty seeking against Plaintiff for alleged [a]ttempted possession when non-minority/non-Latino officers charged with and/or

found guilty of [a]ctual possession did not sustain termination and/or the Defendants did not even seek their termination as they did and do against Plaintiff herein.

203. That the Defendants' unlawful conduct against the Plaintiff and the Defendants New York City Police Department's and the City of New York's failure to address, remedy, intervene, stop and/or prevent the unlawful conduct of the Defendants herein complained of by the Plaintiff renders such unlawful conduct the custom and practice of the Defendants, New York City Police Department and the City of New York custom and practice.

204. That it is the custom and practice of Defendants, the New York City Police Department and the New York City to act under color law to discriminate against the Plaintiff and others similarly as Plaintiff based upon the race, religion, national origin and disability.

205. That it is the custom and practice of Defendants the New York City Police Department and the New York City to act under color of law and retaliate against the Plaintiff and others similarly situated as Plaintiff because the Plaintiff and others similarly situated as the Plaintiff complain to the Chain of Command, to Defendants the City of New York and New York City Police Department as to hostile and discriminatory work environment that the Defendants herein named subjected and continue to subject the Plaintiff and others similarly situated as the Plaintiff to.

206. That on or about April 3, 2012 in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, color and national origin.

207.    That on or about June 14, 2012, in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, color and national origin.

208.    That on or about August 8, 2012, in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, color and national origin.

209.    That on or about October 23, 2012 and November 27, 2012 in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and/or continued the prosecution of the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, color, and national origin and in retaliation for Plaintiff filing a claim of discrimination and hostile working environment against the Defendant.

210.    That on or about December 18, 2012, January 14, 2103, January 29, 2013, February 22, 2013, February 26, 2013 and April 16, 2013 in further retaliation, hostile work environment and discrimination against the Plaintiff, the Defendants again appeared, presented, testified and prosecuted the Plaintiff in Departmental Hearings in furtherance of their unlawful conduct and in acting in concert each with the other to continue to discriminate against the Plaintiff based upon Plaintiff's race, color and national origin

211.   On or about January 29, 2013, Plaintiff in exercising his right to complain about discriminatory practice at the workplace, filed a Charge, EEOC Charge No.: 520-2013-00827, charging discriminatory practice by the Defendants with the United States Equal Employment Opportunity Commission asserting discrimination by Defendants and in particular, Defendants Defendants Hyland, Corrado, De Ceglie, Flunory, Swartz and Bland  based upon race, color, retaliation and national origin.  (Annexed hereto and made a part hereof as Exhibit "A" is a copy of said EEOC Charge of Discrimination; Charge No.: 520-2013-00827.

212.   On or about March 22, 2013, the EEOC issued Plaintiff a Notice of Right to Sue Letter herein which Plaintiff received on or about April 1, 2013, approximately nine days subsequent to March 22, 2013.  (Annexed hereto and made a part hereof as Exhibit "A" is a copy of said EEOC Notice of Right to Sue.)

213.   That during the course of the foregoing continued course of retaliation, hostile work environment and discrimination against the Plaintiff in prosecuting the Plaintiff, Defendants each individually appeared in a departmental hearing and/or acting in concert with the other, caused others to personally  appeared and/or presented evidence and/or caused evidence to be presented and/or caused others to  testified against Plaintiff in furtherance of their unlawful discrimination against Plaintiff based upon Plaintiff's race, national origin, religion and disability and in further retaliation for complaining about same unlawful conduct and hostile work environment.

(Annexed hereto and made a part hereof as Exhibit "C" are documents relating to, corresponding to and reflecting the foregoing factual, general and procedural facts set forth herein above.)

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 42 U.S.C. SECTIONS 1981, 1981(a), & 2000e. seq.

214.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint number "1" to "213" with the same force and effect as if set forth at length herein.

215.    Defendants the City of New York and New York City Police Department are employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. Section 1981, 1981(a), 42 U.S.C. Section 2000e, *et. seq.*

216.    Defendants' unlawful, discriminatory, retaliatory, abusive and/or hostile conduct/work environment and unlawful disparate treatment against Plaintiff because of his race, color and/or national origin and in retaliation for his exercising his right to engage in the protected activity of registering complaints about the workplace, deprived Plaintiff of his right to make and enforce contracts to the full and equal benefit of Defendants' regulations and all laws and proceedings for the security of Plaintiff's employment in violation of Title VII of the Civil rights Act, 42 U.S.C. Sections 1981, 1981(a), 2000, 2000(e), 2000(e)(3) and 2000(e)-2(a)(1).

217.    Defendants, their officers, agents, servants, and/or employees are responsible for the intentional and unlawful/discriminatory/hostile/retaliatory/disparate acts, conduct, treatment, practices and /or policies, and for creating and/or fostering a hostile work environment that caused Plaintiff to suffer and sustain damages.

218.    Defendants, their officers, agents, servants, and/or employees are/were, at all times herein mentioned, acting within the scope of their employment.

219.   Defendants the City of New York and New York City Police Department are liable for said Defendants' intentional, unlawful, discriminatory, hostile, disparate and/or retaliatory acts, conduct, treatment, practices and/or policies against Plaintiff.

220.   That during the course of his employment, Plaintiff engaged in the protected activity of registering complaints to Defendants about the hostile and unlawful work environment/conditions with his last complaint being made before and subsequent to each and every unlawful act and of mistreatment by the Defendants towards the Plaintiff.

221.   Defendants, their officers, agents, servants, and/or employees discriminated in the workplace against Plaintiff because of his race, color and/or national origin and in unlawful retaliation to Plaintiff's complaints about the hostile work environment/conditions.

222.   Defendants do not treat Caucasian and/or non-Latino, non-Hispanic and/or non-Spanish officers similarly situated as Plaintiff, as they treated the Plaintiff.

223.   Defendants do not treat other groups who do not engage in the protected activity of registering complaints about work conditions/environment, similarly situated as Plaintiff, as they treated Plaintiff.

224.   Defendants New York City and New York City Police Department are liable for said Defendants' intentional, unlawful, discriminatory and/or disparate acts, conduct, treatment, practices and/or policies that were intentionally, hostilely, unlawfully and discriminatorily applied to Plaintiff.

225.   Defendants New York City and New York City Police Department knew of said Defendants' unlawful, discriminatory, disparate, retaliatory and hostile and/or abusive acts, conduct, treatment, practices, and/or policies against the Plaintiff, and/or, had same Defendants exercised due care they would have discovered same.

226. Defendants failed to take remedial and/or corrective action to address the unlawful, retaliatory, disparate and discriminatory practices the Defendants caused to be visited upon the Plaintiff.

227. Defendants unlawfully created and/or fostered a discriminatory, disparate, retaliatory, hostile and/or abusive work environment against the Plaintiff based upon his race, color and/or national origin and/or for his exercise of a protected activity of complaining about the hostile work environment/conditions.

228. Defendants the City of New York, the New York Police Department and the New York City Police Department Advocate's Office as employers of Defendants Hyland, Corrado, De Ceglie, Flunory, Schwartz and Bland are liable for said Defendants' intentional, unlawful, disparate and discriminatory acts, conduct, treatment, practices and/or policies that were intentionally, hostilely, unlawfully and discriminatorily applied to Plaintiff.

229. Defendants knew of the unlawful, discriminatory, disparate, retaliatory, hostile and/or abusive acts, conduct, treatment, practices, and/or policies against the Plaintiff, and/or, had Defendants exercised due care, they would have discovered same.

230. That at all times herein mentioned, the Defendants' conduct, actions and/or omissions were intentional and willful violations of Title VII of the Civil Rights Act.

231. That as a direct and proximate result of the foregoing, Plaintiff claims damages herein.

232. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a. Plaintiff suffered damage to his title, position, promotion, salary, pension and/or retirement benefits.

70

b.      Plaintiff suffered and is suffering psychological emotional distress.

e.      Plaintiff has suffered actual monetary losses directly resulting from Defendants'

violation of Title VII of the Civil Rights Act.

f.      Plaintiff is entitled to post-judgment interest on all sums, including attorneys'

fees and costs awarded in this action.

g.      Defendants' conduct was an intentional and willful violation of Title VII of the

Civil Rights Act.

h.      Plaintiff is entitled to an award of liquidated damages within the meaning of

Title VII of the Civil Rights Act.

233.    Plaintiff claims damages herein.

## AS AND FOR A SEOND CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF UNIFORM SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT 38 U.S.C. SECTIONS 4301-4333

234.    Plaintiff repeats and re-alleges each and every allegation set forth above in

paragraphs of the complaint number "1" to "233" with the same force and effect as if set forth at

length herein.

235.    Defendants the City of New York and New York City Police Department are

employers within the meaning and as defined by the Uniform Services Employment and

Reemployment Rights Act P.L. 103-353, 108 Statute 3149, as amended and Codified at 38

U.S.C. Sections 4301-4333. (hereinafter "USERRA").

236.    Pursuant to USERRA, employers, as the Defendants the City of New York and

New York City Police Department cannot discriminate in hiring, employment, reemployment,

retention in employment, promotion or any other benefit of employment because of an

individual's military service.

237.    During the course of Plaintiff's employment with the Defendants the City of New York and New York City Police Department, and continuing to present, the Plaintiff was and is a member of the United States Military Service as defined by USERRA and the Defendants the City of New York, New York City Police Department, Hyland, Corrado, De Ceglie, Flunory, Schwartz and Bland knew that Plaintiff was a member of the United States Armed Forces.

238.    Specifically, Defendant Corrado from when same Defendant was a supervisor of the Plaintiff knew that Plaintiff was a member of the Armed Forces; knew that Plaintiff was called to active duty in support of the United States of America Global War against Terrorism; knew that Plaintiff was deployed to Iraq and served in Iraq for a period of approximately one year.

239.    That during the time period that Plaintiff was employed with the Defendants, and in particular under the supervision of Defendant Corrado, and subsequent thereto and continuing to present, Plaintiff was called to serve one weekend per month and at least two months each year as part of the Plaintiff's obligation in the United States Armed Forces.

240.    That Defendant Corrado did not approve and/or support Plaintiff's military service and made remarks to the effect that Plaintiff was "scamming" the Police Department by serving in the United States Armed Forces.

241.    That Defendant Corrado made the foregoing remarks and/or expressed disapproval of the Plaintiff's military service particularly each time Plaintiff presented same Defendant with military orders to which Plaintiff had to report and/or each time Plaintiff expressed to same Defendant that Plaintiff needed to be excused from work due to military service.

242.   That Defendant Corrado's adverse/discriminatory feelings, attitude, remarks and/or conduct towards the Plaintiff based upon Plaintiff's military service continued even after same Defendant was no longer the direct supervisor of the Plaintiff and was a factor that served as an unlawful basis when Defendant Corrado became a supervisor in the Defendants' Internal Affairs Department and Defendant Corrado was the supervising officer in charge of the investigation of the Plaintiff as to the allegations of Plaintiff's alleged use and possession of anabolic steroids.

243.   That the fact that Plaintiff was and is a member of the United States Armed Forces was and is a factor in the Defendants', particularly Defendant Corrado's, assessment and determination that Plaintiff should be discharged from the New York City Police Department.

244.   That the Defendants have used the investigation and the allegation that Plaintiff attempted to possess anabolic steroids to seek to discharge the Plaintiff from the New York City Police Department when the true reason why same Defendants, particularly Defendant Corrado, want and seek to discharge the Plaintiff from the New York City Police Department is because the Plaintiff is a member of the United States Armed Forces.

245.   That the Defendants have refused and/or declined to promote the Plaintiff to the rank of Lieutenant, despite being duly earned by the Plaintiff, because of Plaintiff's service in the United States Armed Forces.

246.   Defendants' unlawful, discriminatory, retaliatory, abusive, disparate and/or hostile conduct/work environment and unlawful disparate treatment against Plaintiff because of Plaintiff's military service is in violation of USERRA.

247.   Defendants, their officers, agents, servants, and/or employees, are responsible for the intentional and unlawful/discriminatory/hostile/retaliatory/disparate acts, conduct, treatment,

73

practices and /or policies, and for creating and/or fostering a hostile work environment against Plaintiff based upon Plaintiff's military service and, as such, are liable and responsible for the damages Plaintiff suffered/sustained and continues to suffer/sustain therefrom.

248.    Defendants, their officers, agents, servants, and/or employees are/were, at all times herein mentioned, acting within the scope of their employment in discriminating against the Plaintiff due to Plaintiff's military service.

248.    Defendants the City of New York and New York City Police Department are liable for said Defendants' intentional, unlawful, discriminatory, hostile, disparate and/or retaliatory acts, conduct, treatment, practices and/or policies against Plaintiff because of Plaintiff's military service.

249.    That during the course of his employment, Plaintiff engaged in the protected activity of registering complaints to Defendants about the hostile and unlawful work environment/conditions with his last complaint being made before and subsequent to each and every unlawful act and of mistreatment by the Defendants towards the Plaintiff because of Plaintiff's military service.

250.    Defendants, their officers, agents, servants, and/or employees unlawfully discriminated in the workplace against Plaintiff because of Plaintiff's military service.

251.    Defendants the City of New York and New York City Police Department knew of said Defendants' unlawful, discriminatory, disparate, retaliatory and hostile and/or abusive acts, conduct, treatment, practices, and/or policies against the Plaintiff due to Plaintiff's military service and/or, had same Defendants exercised due diligence/care, they would have discovered same.

252.    Defendants failed to take remedial and/or corrective action to address the unlawful, retaliatory, disparate and discriminatory practices the Defendants caused to be visited upon the Plaintiff because Plaintiff was and is a member of the United States Armed Forces.

253.    Defendants unlawfully created and/or fostered a discriminatory, disparate, retaliatory, hostile and/or abusive work environment against the Plaintiff based upon the fact that Plaintiff was and is a member of the United States Armed Forces.

254.    Defendants the City of New York, the New York Police Department and the New York City Police Department Advocate's Office as employers of Defendants Hyland, Corrado, De Ceglie, Flunnory, Schwartz and Bland are liable for said Defendants' intentional, unlawful, disparate and discriminatory acts, conduct, treatment, practices and/or policies that were intentionally, hostilely, unlawfully and discriminatorily applied to Plaintiff because the Plaintiff is a member of the United States Armed Forces.

255.    Defendants knew of the unlawful, discriminatory, disparate, retaliatory, hostile and/or abusive acts, conduct, treatment, practices, and/or policies against the Plaintiff because Plaintiff is and was a member of the United States Armed Forces, and/or, had Defendants exercised due diligence/care, they would have discovered same.

256.    That at all times herein mentioned, the Defendants' conduct, actions and/or omissions were intentional and willful violations of USERRA.

257.    That as a direct and proximate result of the foregoing, Plaintiff claims damages herein.

258.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.     Plaintiff suffered damage to his title, position, promotion, salary, pension and/or retirement benefits.

b.     Plaintiff suffered and is suffering psychological emotional distress.

e.     Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of USERRA.

f.     Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

g.     Defendants' conduct was an intentional and willful violation of USERRA.

h.     Plaintiff is entitled to an award of liquidated damages within the meaning of USERRA.

259.    Plaintiff claims damages herein.

## PENDENT STATE CLAIMS

260.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1"to "259" with the same force and effect as if set forth at length herein.

261.    Defendants are an employer within the meaning of the New York Human Rights Law, New York Executive Law Article 15, and New York Executive Law Sections 290-297.

262.    Plaintiff is an employee within the meaning of the New York Human Rights Law, New York Executive Law Article 15 and New York Human rights Law Sections 290-297.

263.    Plaintiff's race, color and/or national origin are protected classes under, pursuant and/or as defined by the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

264.    During the course of Plaintiff's employment with Defendants, Plaintiff engaged in the protected activity, defined by the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297, of registering complaints with Defendants about the hostile work environment/conditions, the discrimination by Defendants against Him based upon his race, color and/or national origin, the retaliation by Defendants against him and the unlawful disparate treatment of him by the Defendants herein.

265.    As set forth above, Defendants unlawfully discriminated against Plaintiff, created and/or fostered a hostile work environment based upon his race, color and/or national origin, unlawfully subjected him to disparate treatment and/or punishment and further unlawfully retaliated against him for engaging in protected activity and, as such, are liable for their intentional and willful violations of the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

266.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and/or damages:

a.    Plaintiff suffered damage to his title, position, promotion, salary, pension and/or retirement benefits.

b.    Plaintiff suffered and is suffering psychological emotional distress.

c.    Plaintiff has suffered actual monetary losses directly resulting from Defendants' violation of New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

d.    Plaintiff is entitled to post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

e.      Defendants' conduct was an intentional and willful violation of New York Human

Rights Law, New York Executive Law Article 15 and New York Executive Law Sections

290-297.

f.      Defendants' conduct was an intentional and willful violation of New York

Human Rights Law, New Executive Law Article 15 and New York Executive Law

Sections 290-297.

g.      Plaintiff is entitled to an award of liquidated damages within the meaning of

New York Human Rights Law, New Executive Law Article 15 and New York Executive

Law Sections 290-297.

267.    Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental

jurisdiction to hear and adjudicate such claims.

268.    Plaintiff claims damages herein.

## INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

269.    Plaintiff repeats and re-alleges each and every allegation set forth above in

paragraphs of the Complaint numbered "1" to "268" with the same force and effect as if set forth

at length herein.

270.    Defendants, their officers, agents, servants, and/or employees are, at all times

herein mentioned, agents, servants and/or employees acting within the scope of their

employment.

271.    Defendants engaged in extreme and outrageous conduct, intentionally, recklessly,

and/or negligently causing Plaintiff to suffer severe emotional distress.

272.    As a direct result of Defendants' extreme and outrageous conduct, Plaintiff was caused to suffer and sustain psychological injuries including, but not limited to, humiliation, mental pain, anguish, pain and suffering, and emotional distress (both intentional and negligent).

273    As a direct result of Defendants' extreme and outrageous conduct, Plaintiff claims damages for the injuries set forth above.

274.    Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

275.    Plaintiff claims damages herein.

## DEFENDANTS THE CITY OF NEW YORK AND THE NEW YORK CITY POLICE DEPARTMENT'S FAILURE TO TRAIN, SUPERVISE, MANAGE &/OR CONTROL

276.    Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1" to "275" with the same force and effect as if set forth at length herein.

277.    Defendants the City of New York, the New York City Police Department and the 103rd Precinct of the New York City Police Department have/had a duty to supervise, manage, oversee, maintain, control and/or train their employees, servants and/or agents.

278.    Defendants Hyland, Corrado, De Ceglie, Flunory, Swartz and Bland are employees, servants and/or agents of the Defendants the City of New York, the New York City Police Department and the 103rd Precinct of the New York City Police Department.

279.    Defendants the City of New York, the New York City Police Department and The New York City Police Department Advocates' Office have/had a duty to supervise, manage, oversee, maintain, control and/or train their employees, servants and/or agents, particularly Defendants Defendants Hyland, Corrado, De Ceglie, Flunory, Swartz and Bland.

79

280. Defendants the City of New York, the New York City Police Department and the 103rd Precinct of the New York City Police Department are negligent in that they failed their duty to supervise, manage, oversee, maintain, control and/or train their employees, servants and/or agents, particularly, Defendants Defendants Hyland, Corrado, De Ceglie, Flunory, Swartz and Bland, so that the Defendants, their employees, agents and/or servants would be aware that it is unlawful to discriminate against Plaintiff, unlawful to create and/or foster a hostile work environment based on her race, color, and/or national origin and unlawful to retaliate against Plaintiff for engaging in a protected activity -- in violation of the New York Human Rights Law, New York Executive Law Article 15 and New York Executive Law Sections 290-297.

281. Defendants the City of New York, the New York City Police Department and the 103rd Precinct of the New York City Police Department's negligence was a direct and proximate cause of the harm/damages/injuries visited upon the Plaintiff.

282. Further, as a direct and proximate result of Defendants the City of New York, the New York City Police Department and the 103rd Precinct of the New York City Police Department's negligence, Plaintiff suffered and continues to suffer injuries and/or damages.

283. That at all times herein mentioned, the Defendants' conduct was an intentional and willful violation of Title VII of the Civil Rights Act, 42 U.S.C. Section 1981, 1981(a), 2000, 2000(e), 2000(e)(3), and 2000(e)-2(a)(1), *et. seq.*, and New York Human Rights Law, New Executive Law Article 15 and New York Executive Law Sections 290-297.

284. Pursuant to 28 U.S.C. Section 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

285. That as a direct and proximate result of the foregoing, Plaintiff claims damages herein.

## **BREACH OF CONTRACT**

286. Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1" to "285" with the same force and effect as if set forth at length herein.

287. That, upon information and belief, in September 1999, a Federal lawsuit was commenced by Twenty-Two individuals and the New York City Police Department Latino Officers' Association alleging discriminatory and disparate application of the New York City Police Department's disciplinary rules, procedures and punishments of Latinos, Afro-Americans and other minority police officers by Defendants the City of New York and the New York City Police Department.

288. Based upon information and belief, the Honorable Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York certified the foregoing lawsuit as a class action which included all African-American and Hispanic Police Officers and certain civilian employees of the New York City Police Department from 1995 forward then employed with the New York City Police Department and those who will be employed by the New York City Police Department as uniformed officers.

289. Based upon information and belief, that lawsuit alleged that African Americans and Latino Officers were less likely to be acquitted and have their charges dismissed than whites at Departmental Hearings with the New York City Police Department.

290 Based upon information and belief, that lawsuit alleged that Afro-Americans were Sixty (60) percent more likely and Hispanics were Thirty (30) percent more likely to be found guilty at the New York City Police Department trials than whites.

81

291.   Based upon information and belief, that lawsuit alleged that in terms of overall dispositions by the New York City Police Department, charges against whites were more often dismissed or resulted in findings of not guilty while Afro-Americans and Latinos were far more often found guilty.

292.   Based upon information and belief, that lawsuit further alleged that when findings of guilt were handed down, Afro-Americans and Hispanics were terminated by the New York City Police Department from said Department with greater frequency than white officers and the white officers received less penalties/punishment.

293.   Based upon information and belief, the Defendants the City of New York and New York City Police Department settled the foregoing lawsuit with the Plaintiffs of that lawsuit in which, the Defendant provided a monetary award to the Plaintiffs of that lawsuit and members of the class and, more significantly, Defendants agreed to an injunctive relief that the Defendants, the City of New York and New York City Police Department would be enjoined from discriminating based upon race, color, national origin, or ethnicity in the future.

294.   Based upon information and belief, on or about December 2003, pursuant to the settlement of the foregoing class action lawsuit, Defendants the City of New York and New York City Police Department entered into a signed stipulation of settlement – a contract- by the terms and conditions of which the Defendants the City of New York and New York City Police Department were obligated to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being investigated, charged or penalized in a discriminatory manner, to wit: a "Disciplinary Review Unit".

82

295.    That based upon information and belief, pursuant to said contract, the signed stipulation of settlement therein, the Defendants were obligated to establish this "Disciplinary Review Unit" to track and analyze whether minority members of the New York City Police Department, like Plaintiff herein, were being treated in a discriminatory manner when being disciplined as well as the Defendants were to establish an "Advisory Committee" to address employment discrimination and retaliation concerns.

296.    Further, based upon information and belief, pursuant to same contract/stipulation of settlement, the Defendants were to develop a "Know Your Rights" guide to the New York City Police Department discipline system and to enhance existing databases and create new databases and report data thought to be relevant to analyzing whether or not discrimination was continuing on the New York City Police Department discipline system.

297.    That, based upon information and belief, on or about September 17, 2004, the District Court entered a judgment and order approving said stipulation of settlement/contract, and its terms and conditions, in the foregoing class action lawsuit.

298.    Based upon information and belief, the settlement agreement/contract contained specific steps that the City of New York and New York City Police Department would take to establish procedures to prevent discrimination.

299.    This Plaintiff, and other Afro-Americans and Latino/Hispanic Officers similarly situated as this Plaintiff, are members of the Class set forth in the foregoing lawsuit and are members of the Class of police officers that the foregoing settlement agreement/stipulation/contract was designed and entered into to protect.

300.    Plaintiff is a Latino/Hispanic Officer who was employed by the New York City Police Department at or subsequent to the foregoing settlement/contractual agreement and, as

such, is a member of that Class that the foregoing lawsuit and settlement agreement/contract was intended to futuristically protect and, as such, Plaintiff is a beneficiary of said contract and/or has standing to seek to have a Court compel the Defendants to abide by all of the terms and conditions of same including, but not limited to, compelling the Defendants to establish a review unit to analyze the New York City Police Department's disciplinary process regarding discrimination and retaliation and whether African American and Latino/Hispanic members of the Police Department are being disciplined, investigated, charged, prosecuted and/or penalized in a discriminatory manner and to comply with the settlement agreement's specific steps that the City of New York and New York City Police Department should have undertaken to establish procedures to prevent discrimination.

301.    Based upon information and belief, per the terms of the foregoing stipulation/agreement, the Defendants the City of New York and New York City Police Department was obligated to establish an "Employment Practice Unit" which essentially was slated to provide and conduct the same and/or similar function as the "Disciplinary Review Unit."

302.    The Defendants New York City and New York City Police Department breached the contract/stipulation agreement in that the Employment Practice Unit' is wholly ineffective, inadequate and inept and did not and does not have an efficient system in place to track and analyze whether minority members of the New York City Police Department are being treated in a discriminatory manner when disciplined.

303.    The Defendants New York City and New York City Police Department breached the contract/stipulation agreement in that the "Employment Practice Unit" has failed and/or did not track and/or analyze whether minority members of the New York City Police Department are

84

being treated in a discriminatory manner when disciplined and their efforts fell short of the terms and conditions outlined in same stipulation/contract and this Plaintiff, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

304.    Based upon information and belief, per the terms of the foregoing stipulation/agreement, the Defendants the City of New York and New York City Police Department was obligated to establish an "Advisory Committee" to address employment discrimination and retaliation concerns within the New York City Police Department.

305.    The Defendants New York City and New York City Police Department breached the contract/stipulation agreement in that the Defendants failed to establish an "Advisory Committee" to address employment discrimination and retaliation concerns within the New York City Police Department and their efforts fell short of the terms and conditions outlined in same stipulation/contract and this Plaintiff, and other Latinos and Afro-American Officers similarly situated, have been adversely affected by Defendants' failure to implement the terms and conditions of the settlement agreement.

306.    The Defendants New York City and New York City Police Department breached the contract/stipulation agreement in that the Defendants failed to establish a meaningful and/or effective and/or operable "Advisory Committee" to address employment discrimination and retaliation concerns within the New York City Police Department.

307.    As prima facie proof that the Defendants New York City and New York City Police Department breached the contract/stipulation, the Officers outlined herein in paragraph "179—1-27" are all Non-Hispanic, Non-Minority Officers who were charged with, pled guilty to and/or convicted at Departmental Hearings of more egregious offenses than the Plaintiff herein

to wit: actual possession and/or ingestion and/or use of anabolic steroids while Plaintiff herein is charged with attempted possession of anabolic steroids. Yet, those officers were not discharged from the New York City Police Department while the Defendants New York City and New York City Police Department from the time they commenced investigation, filing of Specification and the actual prosecution of the Plaintiff herein has sought to and has stated repeatedly that it is their intent herein to terminate Plaintiff's employment with the New York City Police Department based upon the allegations of Attempted Possession of Anabolic Steroids.

308.    That the Defendants, New York City and New York City Police Department have sought and are seeking to terminate Plaintiff's employment based upon Plaintiff's race, national origin, military service, and in retaliation for Plaintiff complaining about the Hostile Work Environment in violation of the aforementioned Agreement/Contract.

309.    That the Defendants breached the foregoing contract/stipulation of settlement therein and, had the Defendants complied with the aforementioned stipulation of settlement/contract and its terms and conditions, had the Defendants established a review unit and advisory committee, in addition to the other terms and conditions outlined in said stipulation/contract, had the Defendants properly and/or adequately established same and/or had the review unit and advisory committee, if so established, been performing its duties as per the stipulation of settlement/contract to try and prevent the unlawful discrimination and disparate treatment of Latino, African American and/or other minority police officers, than the review unit, the advisory committee and the Defendants would have and should have detected, stopped, prevented and/or remedied the very unlawful discrimination, retaliation, hostile work environment and disparate treatment by Defendants against Plaintiff herein; particularly in reference to the unlawful disparate treatment by Defendants against Plaintiff related to their